F. R. THURBER, Appellee, v. W. A. DUCKWORTH, Custodian of State House, Appellant.

**Evidence:** RELEVANCY: CONCLUSION. Plaintiff alleged that he was employed as janitor at the State House under the Soldier's Preference Act, and was discharged by defendant without a hearing to which he was entitled. Defendant alleged that plaintiff resigned the position rather than meet charges of incompetency and insubordination. *Held,* defendant's testimony as a witness for himself that plaintiff was abusive and insubordinate and that he summarily discharged him, was relevant and material and not a conclusion.

**Constitutional law:** SPECIAL PRIVILEGES: APPOINTMENT AND DISCHARGE OF UNION SOLDIERS. The statute giving to honorably discharged soldiers of the Civil War a preference in the matter of appointment to office does not contravene Article 1, Section 6, of the Constitution, prohibiting the granting of special privileges or immunities to any class of citizens. Nor is the Act violative of the constitution in that it gives to a Union soldier immunity from discharge after appointment not given to non-union soldiers appointed to like positions; as the right of appointment to public office is not a vested right, and the state may prescribe the terms of appointment and conditions of discharge of its appointees the same as private individuals.

**Appointment to office of Union soldiers:** DISCHARGE: DAMAGES: EQUITABLE RELIEF. The statutes relative to appointment to office of Union soldiers provide that one who has been denied the preference right, or has been unlawfully discharged, may have a remedy by mandamus for restoration in case of wrongful discharge, and may also recover damages for the wrong in the same equitable action without the intervention of a jury.

*Appeal from Polk District Court.*—HON. C. A. DUDLEY, Judge.

TUESDAY, MAY 12, 1914.

ACTION in mandamus to require defendant, as custodian of the State House to restore plaintiff to a position to which he has been appointed under the Soldier's Preference Law, and to recover damages for a wrongful discharge. Decree and judgment for the plaintiff. Defendant appeals.— *Affirmed.*

*George Cosson,* Attorney General, and *C. A. Robbins,* Assistant Attorney General, for appellant.

*Brown & Missildine,* for appellee.

GAYNOR, J.—The plaintiff claims: First, that for about four years prior to the 31st day of July, 1913, he was employed as janitor in the State Capitol Building in Des Moines, Iowa; second, that he was a soldier in the Union Army during the Civil War, and was honorably discharged; third, that the defendant, W. A. Duckworth, was the regularly appointed and acting custodian of the State House during the month of July, and that the plaintiff was employed by him under the Old Soldier's Preference Law as janitor, and was under his supervision; fourth, that on the 31st day of July, 1913, the defendant discharged the plaintiff from further service, without notice and without hearing, and without having made any charges against him, in violation of section 1056-a16 of the supplement of the Code of Iowa; fifth, that the plaintiff was receiving at the time of his discharge, $65 a month for his services. The plaintiff brings this action praying a writ of mandamus, directing the defendant to reinstate him as janitor, and to recover damages from the defendant on account of the wrongful discharge. The defendant, answering the plaintiff's petition, denies that he discharged the plaintiff, but alleges the truth to be that plaintiff voluntarily resigned. The defendant next pleads that prior to the 31st day of July, he

found plaintiff to be incompetent and guilty of misconduct and insubordination, and that he deemed it his duty to prefer charges against the plaintiff and secure his discharge, that he so informed the plaintiff that he would have to prefer charges against him unless he resigned, and that plaintiff thereupon announced that he would resign, and did resign, and therefore waived his right to have charges preferred against him before being discharged. The defendant, further answering, says that section 1056-a15 and section 1056-a16 of the Code Supplement are unconstitutional and in conflict with section 6, art. 1, of the Constitution of Iowa. At the conclusion of the evidence, the defendant filed the following motion, which was by the court overruled:

The defendant moves the court to strike from the record the statement of the defendant, Duckworth, to the effect that he discharged the plaintiff, as being incompetent, immaterial, and irrelevant, and a mere conclusion of the witness, not responsive to the question asked. Defendant also moves the court to strike from the record the statement of the plaintiff, Thurber, to the effect that he was discharged, for the same reason. Defendant further moves the court to dismiss the petition of plaintiff for the reason that the statute under which the prosecution is brought is in violation of section 6, art. 1, of the Constitution of Iowa, in that it grants privileges and immunities to honorably discharged soldiers that are not on the same terms equally available to other citizens.

Thereupon the defendant filed the following motion, with an amendment thereto as follows:

(1) That it affirmatively appears on the face of plaintiff's petition that the action is one against the defendant, W. A. Duckworth, as custodian of the State House in his official capacity as such custodian, and is in effect a suit against the state for recovery of money, and it has not been made to appear that the state has in any way consented to the bringing of such suit.

(2) That the testimony affirmatively shows without con-

tradiction that the plaintiff was asked whether or not he would have required the defendant to prefer charges against him in order to procure his removal from said position or resign, and that he replied thereto that he would quit and immediately surrendered the keys, left the place, failed to return to perform any other or further services, and therefore showed that he was not discharged, but resigned his position, and hence is not entitled to recover.

That there is a misjoinder of parties defendant and causes of action herein for the reason that plaintiff's petition contains what standing alone would amount to a petition in equity for mandamus against the defendant, W. A. Duckworth, in his official capacity as custodian of the State House, compelling him to reinstate the plaintiff to his position of employment; and the said petition also contains what standing alone would amount to an action at law against W. A. Duckworth in his individual capacity for damages on account of his alleged wrongful act in discharging plaintiff from his position of employment at the State House.

This motion was also by the court overruled, and thereupon, the cause being fully submitted, the court entered judgment in favor of the plaintiff and against the defendant, ordering, adjudging, and decreeing that the defendant reinstate the plaintiff to his position as janitor in said Capitol Building, and further that the plaintiff have and recover of the defendant, $195 damages on account of the wrongful discharge.

From these rulings, the defendant appeals, and complains as follows: First, the court erred in finding the plaintiff was wrongfully discharged; second, the court erred in not finding that plaintiff voluntarily resigned his position; third, the court erred in not finding that plaintiff waived his right to have charges preferred and a hearing thereon; fourth, the court erred in not sustaining defendant's motion to strike portions of the testimony of the defendant, Duckworth, for the reasons stated in said motion; fifth, the court erred in not sustaining defendant's motion, in arrest of judgment, upon each of the grounds therein stated; sixth, the court erred in

rendering any money judgment for damages against defendant, for the reason that it was neither alleged in the pleadings, nor shown by the proof, that the defendant had refused to allow the preference provided for in Code Supplement, section 1056-a15, nor that he had reduced the compensation of plaintiff with the intention of bringing about his discharge, as provided in said section; seventh, the court erred, after having restored plaintiff to his position, in awarding plaintiff more than nominal damages; eighth, the court erred in not holding Code Supplement, section 1056-a16, unconstitutional and void, for the reason that it grants to the soldier employee an immunity not equally available to other employees.

The first three errors assigned present only questions of fact, and it is contended that, conceding the law to be as claimed by the plaintiff, yet the plaintiff has failed to show that the defendant has violated the provisions of the law, or deprived the plaintiff of any right to which he was entitled under the law. A careful reading of this record satisfies us that the plaintiff did not resign his position as janitor; that he did not waive his right to have charges preferred against him, and a hearing thereon, as claimed by the defendant. We find, affirmatively, that the plaintiff was discharged by the defendant without compliance with the requirements of section 1056-a16.

· The fourth error assigned relates to the action of the court in refusing to strike out the testimony of defendant while a witness for himself, or, in other words, the defendant asked the court to strike out his own testimony given upon the trial, on the ground that the testimony given by him was incompetent, immaterial, and irrelevant. The testimony sought to be stricken relates to a conversation had between the plaintiff and defendant about the time that the plaintiff was discharged, about the last of July, in which the defendant said, while upon the stand, ''I let the matter run until the last of

1. EVIDENCE: relevancy: conclusion.

July. I then went to him and talked about his resigning; that his work was not satisfactory. He got mad and made use of abusive language and got insubordinate, and I discharged him right then and there, without any ifs and ands.'' The ultimate question to be determined was, Did the defendant discharge the plaintiff? Therefore this testimony was both relevant and material. It was not the conclusion of the witness, but a fact of which he had knowledge. On what theory the defendant can ask that his own testimony be stricken out as not responsive to the question propounded, when it is material and relevant, is not even suggested in the argument, and we think the court did not err in overruling defendant's motion to strike it out.

The other errors assigned raise the question presented on the motions made, hereinbefore set out, and ruled on by the court. First, that this statute under which the prosecution is brought is a violation of section 6, art. 1, of the Constitution of Iowa, in that it grants privileges and immunities to honorably discharged soldiers that are not on the same terms equally available to other citizens; second, that this action is against the defendant, Duckworth, in his official capacity as custodian of the State House, and is in fact a suit against the state for the recovery of money, and the state has not consented to the bringing of the suit; third, that there is a misjoinder of parties defendant and causes of action; one an action in equity to compel the defendant, Duckworth, to reinstate the plaintiff, and the other an action at law against Duckworth in his individual capacity for damages on account of the alleged wrongful discharge.

The law upon which plaintiff predicates his right is found in sections 1056-a15 and 1056-a16, chapter 14-B, title 5, of the Supplement of the Code of 1907, which read as follows:

Preference in Appointments and Promotions. That in every public department and upon all public works in the

state of Iowa, and of the counties, cities and towns thereof, honorably discharged soldiers, sailors, and marines from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment, employment and promotion, over other persons of equal qualifications and the persons thus preferred shall not be disqualified from holding any position hereinbefore mentioned on account of his age or by reason of any physical disability, provided such age or disability does not render him incompetent to perform properly the duties of the position applied for and when such soldier, sailor or marine, shall apply for appointment or employment under this act, the officer, board or person whose duty it is or may be to appoint or employ some person to fill such position or place, shall before appointing or employing any one to fill such position or place, make an investigation as to the qualifications of said soldier, sailor or marine for such place or position, and if he is a man of good moral character and can perform the duties of said position so applied for by him, as hereinbefore provided, said officer, board or person shall appoint said soldier, sailor or marine to such position, place or employment. A refusal to allow the preference provided for in this and the next succeeding section to any honorably discharged soldier, sailor or marine, or a reduction of his compensation intended to bring about his resignation or discharge entitles such honorably discharged soldier, sailor or marine to a right of action therefor in any court of competent jurisdiction for damages, and also a remedy for mandamus for righting the wrong.

Sec. 1056-a16. Removals. Any person whose rights may be in any way prejudiced contrary to any of the provisions of this section shall be entitled to a writ of mandamus to remedy the wrong. No person holding a position by appointment or employment in the state of Iowa, or in the several counties, cities, or towns, thereof, who is an honorably discharged soldier, sailor or marine having served as such in the Union Army or Navy during the late Civil War, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari. The burden of proving incompetency or misconduct shall rest

upon the party alleging the same. Nothing in this act shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officers.

The provision of the Constitution that the defendant claims is violated by this act of the Legislature is section 6, art. 1, and reads as follows: ''All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens.''

The constitutionality of this act first came before this court in 1905, in the case of *Shaw v. Marshall-town*, reported in 131 Iowa, 128, and, after a full discussion, it was held not to contravene this section of the Constitution.

2. CONSTITUTION-AL LAW: special privilege: appointment and discharge of Union soldiers.

The ground on which it is claimed to be unconstitutional is re-examined in the case of *Jones v. Sargent*, 145 Iowa, 298, and there held not to be well taken.

These cases settle the question for this state, and so we do not feel called upon at this time to reconsider and repeat the reasons for such holding.

But it is contended in this case that *Shaw v. Marshall-town* settled only the constitutionality of the first division of section 1056-a15, and determined that the right of preference in appointment there given was not unconstitutional; that 1056-a16 involves a different question, and gives to a soldier appointed under the Preference Act immunity from discharge after appointment that is not given to non-Union soldiers appointed to like positions. Now it follows that if the law is constitutional, and the state, through its Legislature, has a right to say who shall or who shall not receive appointment to public offices other than elective, it surely has a right to say what terms and conditions shall attach to the appointment. Individuals have a right to make conditional contracts touching the terms of employment and make conditions of

employment with their servants, and so has this larger politi-
cal corporate entity a right to say under what terms its serv-
ants, holding office under and by virtue of its appointment,
shall continue in its employment. It has the right to fix the
salaries of its servants. It has a right to fix the duration of
office. It has a right to say under what terms and conditions
they shall serve, and when and under what circumstances
they may be discharged. This is a direction to the servants of
the corporation having appointive power, and a direction to
them obedience to which should be required.

In considering this question, it must be kept in mind that
there is a clear distinction between elective office and ap-
pointive office. Certain servants of this large political entity
can only be elected by a direct vote of the people themselves.
The people have reserved to themselves the right to say what
officers or what agents, or servants shall discharge for them
certain public government functions. But when the people
have, by their Constitution or laws, given to certain officers
elected by them the right to appoint subordinate officers to
discharge public functions, the people, through their proper
legislative power, may say who they may appoint, the terms
under which the appointee may serve, and in this way, restrict
the power granted. It must be borne in mind that no one
has a vested right to be appointed to any public office. It is
not a privilege under the meaning of this provision of the
Constitution.

The state is a corporate legal entity, and the government
is the power vested in it as such. It is a name in which the
people regulate, manage, and control the affairs of a certain
distinct segregated territory. The people elect the servants,
who discharge the functions of this corporate entity, by direct
vote. These servants are given, by the people, power to
appoint agents with restricted authority to serve in desig-
nated capacities. They intrust this right and power to the
servants elected by them. In granting this power, they may

direct its control, and as to how it shall be exercised, and that is all that is attempted here.

The government of this state is divided into three co-ordinate branches; each speaking for and representing the people within the limitation of the prerogatives granted it by the people, through their Constitution. The Legislature, within the limitations of its constitutional right, formulates and promulgates the rules. (laws), which not only govern the people within its territory, but which direct the manner in which the business of the corporate entity shall be dis-charged, formulates rules for the control, direction, and guidance of the public servants of the corporate entity, whether they be elected directly by the people, or whether they be appointed by servants elected by direct vote; this of ' course, within the limitations of their constitutional right to do so. The Constitution is the fundamental law; the law that comes direct from the people, through the vote of the people. It is, as it were, a limitation upon the power of the Legislature, acting as a general agent for the corporation, in respect to the matters intrusted to it.

The same reasoning that supports and sustains the right of the Legislature to enact section 1056-a15 sustains its right to adopt the section in question. The last does not any more contravene the provisions of the Constitution than does the first.

The conditions on which a public servant may be dis-charged inhere in the very appointment made, and become a part of the terms and conditions of the contract of employ-ment, under the terms of the act in question. The state may make its own contracts with servants appointed by it, and the law of the state becomes a part of the contract of employ-ment. It may make a contract with one servant for employ-ment, with condition that he may be discharged at any time without notice. It may make a contract of employment with another servant that he shall not be discharged until he re-ceives certain notice and a right to be heard. It may make

a contract with one servant, and not with another, that he shall be discharged only for certain derelictions of duty affecting the public welfare. These all relate to the right of contract, regulated and controlled by the Constitution and laws of the state, and there does not appear to be any reason why the state, in the selection of its servants, should be more restricted in its contractual power with a servant, than is an individual with respect to the same matter.

It is next contended that the court erred in rendering judgment against the defendant for damages in an action in equity, for the reason that the defendant was entitled to a trial by jury, as in a law action on the question of damages, and that there was therefore a misjoinder of parties and a misjoinder of causes of action. The answer to this is found in the statute itself, in which it is provided that he may have a remedy by mandamus for the righting of the wrong, the wrong consisting in his discharge in violation of the statute, and also a right of action for damages. There is but one wrong. That is involved in the act of discharge. Mandamus remedies the wrong by requiring the restoration to the position from which he was wrongfully discharged. The damages are an incident to the wrong. Equity, having assumed jurisdiction to right the wrong, may retain jurisdiction to grant all the relief to which the party is entitled, traceable to the wrong involved. Equity having assumed jurisdiction, retains jurisdiction to grant all the relief, which, under the facts, the party is entitled to; and this to avoid a multiplicity of suits.

3. APPOINTMENT TO OFFICE OF UNION SOLDIERS: discharge: damages: equitable relief.

The court is not without authority for this proceeding. The case of *People v. Ahearn* (Sup.) 121 New York Supp. 819, supports this view. *Bell v. Thomas,* 49 Colo. 76. (111 Pac. 76, 31 L. R. A. [N. S.] 664) ; *McClure v. Scates,* 64 Kan. 282 (67 Pac. 856). But, independent of these cases, the general rule is, for which no authority need be cited, where a wrong has been done, and the aid of a court of equity is involved to

right the wrong, that, having secured jurisdiction for this purpose, it may and will retain jurisdiction, even to the extent of granting relief, which independently could be granted only in an action at law. This is done upon the theory that a court of equity ought not, and, therefore will not, turn one away to seek relief in a court of law which can be granted in the very proceeding then before that court. We think there is nothing in defendant's contention on this point.

It is next contended that the statute only grants a right of action for damages where the party charged refused the preference or reduced the compensation after appointment, with intent to bring about a resignation or discharge; that it does not lie where the party was actually wrongfully discharged in violation of his rights under the statute. To hold this would be "to keep the word of promise to the ear, and breach it to the hope." It would be to give a construction to the words of the statute by which the purpose and intent of the statute would be defeated. To allow recovery of damages to a party whose salary had been reduced, for the purpose of bringing about his discharge, and was effectual in the accomplishment of that purpose, and deny to one who stood in the same right, because he was actually wrongfully discharged ("without ifs or ands"), would be to ignore the very evidence, intent and purpose of the statute, which is to give relief to one who is wrongfully deprived of his position by the wrongful act of another, under the conditions provided for in the statute.

Upon the whole record, we think the court committed no error and the case is—*Affirmed.*

LADD, C. J., and DEEMER, WEAVER, EVANS, PRESTON, and WITHROW, JJ., concur.