Hogan, J.
 

 Numerous cases involving the rights of veterans to be retained in office have been presented to the courts of this state for determination. In a number of opinions reference has been made to the beneficent purposes of the laws enacted for the protection of veterans, and the reported cases indicate the care exercised by the courts in the preservation of the rights of veterans under the statute. Nearly twenty years ago this court construed the Veteran Act, and Judge Andrews, writing, said:
 

 “ It was intended to create a privileged class entitled to preferential employment in subordinate positions in the public service, the foundation of the preference being
 
 *333
 
 meritorious service as soldiers and sailors in the war -x- -x- The preference is given not only in clerical or other
 
 subordinate
 
 positions, but to every person seeking public employment as a laborer on the canals or on the streets of a city, or in any capacity however humble.”
 
 (People ex rel. Fonda
 
 v.
 
 Morton,
 
 148 N. Y. 156, 162, 163.)
 

 A few years later, in
 
 People ex rel. Jacobus
 
 v.
 
 Van Wych
 
 (157 N. Y. 495, 503), Chief Judge Parker, writing for this court, quoted the language of Chief Judge Andrews from the
 
 Fonda
 
 case, and wrote:
 

 “ This interpretation of the statute is in accord with the general understanding of it, and is borne out by the title of the act, which is
 
 ‘
 
 An act respecting the
 
 employment
 
 of honorably discharged Union soldiers and sailors in the public service of the State of New York, relative to removals.’ Certainly the title does not suggest that public officers, vested with discretion in the performance of their duties, subject to no direction, hut on the contrary empowered to appoint clerks and other subordinates and fix their compensation, were intended to be affected by the statute, the purpose of which was stated in its title. And as the term ‘ position ’ that the statute makes use of is an indefinite one and may include officers or be limited to cases of employees, it is proper to refer to the title of the statute to determine its scope and intent.
 
 (People ex rel. Westchester Fire Insurance Co.
 
 v.
 
 Davenport,
 
 91 N. Y. 574;
 
 People ex rel. Collins
 
 v.
 
 Spicer,
 
 99 N. Y. 225;
 
 Bell
 
 v.
 
 Mayor, etc.,
 
 105 N. Y. 139.)
 

 “Thus referring to the title, and according to it its proper weight, we readily perceive that the word
 
 ‘
 
 position ’ in the connection in which it is used, is intended to embrace all subordinate places in the public service, and that the statute is limited in its operations to those engaged in the public employment, as that term is ordinarily used, which does not include the more important municipal offices.
 

 
 *334
 
 “So far as we have observed the view taken by Chief Judge Andrews, that the veteran acts apply only to subordinate positions, is in harmony with all judicial expression on the subject, and is not only justified but required by the statute when its provisions are read in connection' with its title.”
 

 We have called attention to the language adopted by this court in the cases cited, because of the criticisms made in this case upon the decisions, and for the purpose of restating the principles of law which must govern in the construction of the statutes as they exist at the present time.
 

 In the
 
 Jacobus
 
 case Chief Judge Parker said: “It will be difficult at times to determine whether a given position is a
 
 subordinate
 
 one or not, and possibly no rule can be laid down by which one class can always be readily distinguished from the other.”
 

 Following the decision in the
 
 Jacobus
 
 case, it is necessary to ascertain whether or not the position of auditor of the city of Buffalo is an independent office charged with the performance of important public duties, or a subordinate position, and for that purpose reference must be had to the charter and ordinances of the city to ascertain the method of appointment to the office of auditor, the sources and nature of the duties imposed upon the person so appointed, the character and extent of the powers to be exercised, and to what officer or body the auditor is inferior or subordinate (if any).
 

 Section 58 of the charter of the city of Buffalo provides that the auditor shall be appointed by the comptroller with the advice and consent of the common council.
 

 Section 17, subdivision 2, of the charter, as amended by chapter 120 of the Laws of 1909, authorized the common council from time to time to enact ordinances “to prescribe the duties of all officers or persons elected or appointed under this act not herein prescribed; to prescribe methods of auditing and paying any and every
 
 *335
 
 indebtedness of the city and any and every claim against the city; to prescribe the manner in which and the purposes for which the moneys annually appropriated may be used; to prescribe the methods by which the city may incur indebtedness; to prescribe the methods by which each and every official or person in the employ of the city shall keep or assist in keeping account of the receipts and disbursements of moneys belonging to the city, and of work done for or supplies or materials furnished to the city; any provision of this act to the contrary notwithstanding. ”
 

 Subsequent to the amendment of 1909 the common council of the city of Buffalo did enact ordinances, so far as important here, as follows:
 

 The first sentence of subdivision 18 of section 8, chapter 3, provided:
 
 “
 
 The comptroller, by and with the advice and consent of the common council, shall appoint an auditor,
 
 whose duty it shall he to examine all claims of every hind against the city, and to certify in writing as provided in the ordinances.”
 
 As heretofore stated, the power of the comptroller to appoint an auditor existed under section 58 of the city charter.
 

 What claims do the ordinances require shall be certified in writing by the auditor ? The form of the claim is provided for by section -8, which requires that all claims of every nature against the city (except for principal and interest upon bonds of the city and for salaries or wages of employees) must be in writing and verified by the claimant as just and correct. If for work, labor or services of any kind, merchandise, materials or articles of any kind, for which the cost does not exceed $500, the claims must state the place where, the time when and the department for which the work, labor or services, merchandise, materials or articles were furnished, and their character and by whom and by what authority. If for work, labor, services, merchandise, materials or articles, for which the cost exceeds $500, and a written contract has been entered
 
 *336
 
 therefor by the city, the claimant therefor must state the. date of the contract, the time and place when and where the work, labor, services, merchandise, materials or articles for which payment - is claimed was furnished, the amount therefor, and the person who accepted the same for the city. Claims
 
 thus made out
 
 are filed with the head of the department and thereafter must be certified by the head person in charge of the department or subdivision of the city, and “ on or before the 21st day of each month, all of the claims duly certified to as aforesaid must be delivered by the head of each department or other regular subdivision of the city to the auditor.”
 

 Subdivision 9 provides: “ Before any claim other than for salary or wages can be paid,
 
 the auditor must certify in writing that the claim is correct, just, and an obligation of the city and due and payable
 
 * * * but if for any reason the auditor cannot so certify to any claim he shall forward the claim to the common council with a report of his reason for not certifying it, and any such claim not certified to by the auditor the common council may audit provided it is a legal liability of the city.”
 

 Subdivision 12 provides that all claims required to be reported upon by the auditor shall be certified or reported by him within thirty days after the filing with him.
 

 Subdivision 13 provides that after claims are certified by the head of the department and by the
 
 auditor “
 
 and by the comptroller in accordance with these preceding subdivisions of this section they shall be paid * * *.”
 

 Subdivision 15 provides “except as in this section-specifically provided
 
 no claim against the city shall be paid
 
 until it has been certified by the head of the department or other regular subdivision of the city and by the auditor and comptroller as in this and the preceding subdivisions of this section provided.”
 

 Subdivision 18, to which reference has been made, then confers power upon the auditor to issue subpoenas to and compel the attendance of witnesses and the production of
 
 *337
 
 books and papers upon an examination before him of any account or claim against the city, to administer oaths and affirmations to any person summoned and appearing on any such examination. Willful false swearing by any witness or person to any material fact on such examination shall be deemed perjury and punishable as such. In case a person shall fail or refuse to obey such subpoena or refuse to take the proper oath or affirmation or to produce books and papers or refuse to answer any proper question, the auditor may apply to a judge or justice of any court of record within the city for a subpoena to compel the attendance of such person or the production of such books or papers before a judge or justice of the court to be inspected or examined regarding such account or claim. This section also requires the auditor to keep books in which shall be entered all accounts and claims against the city presented to him for audit, together with a note of the action taken by him thereon. He is also given. authority to employ one clerk and as many more as shall be from time to time authorized by the common council.
 

 Section 12 imposes upon the auditor the duty, after the general estimates for any year have been made, before auditing any account or claim, to see that the payment of such account or claim has been provided for in the estimates, and refuse to certify any claim against the city the payment of which has not been so provided for.
 

 Other subdivisions of section 8 have reference to the salaries of officers and persons in the employ of the city, and to claims for damages caused by negligence of the city, with reference to which classes no duty is imposed upon the auditor.
 

 With reference to interest or principal to become due during any fiscal year upon bonds or certificates of indebtedness by the city the ordinances provide the comptroller shall set forth in a statement properly certified as
 
 *338
 
 correct by him the different issues of the city bonds outstanding and the dates of payment of their principal and interest; the amounts of principal and interest coming due on bonds and certificates of indebtedness during the fiscal year, and persons to whom, the times when and the places where such principal and interest are payable, and to file the same with the auditor before the 15th day of July in each and every year. By subdivision 9 of section 8 the auditor is required to certify to the common council, in advance of the same becoming due and payable, claims for principal and interest of bonds and certificates of indebtedness.
 

 The affidavit of the defendant Gleason read upon the motion in opposition to the application for a peremptory writ of mandamus discloses that the auditor acts independently of any other officer or department of the city; that he is not under the direction of the comptroller or any other person or officer but reports directly to the common council. The auditor’s department is separate and independent from any other office or department of the city. The auditor submits to the comptroller, in the same manner as other departments of the city, an estimate of the expenses of his office to be included in the annual estimate. He submits and certifies the payroll of the auditor’s department both to the city clerk and to the civil service commission. He investigates all contracts of the city, all purchases made by the city, and determines whether or not the services charged for have been rendered or materials furnished as certified and reported to him by the heads of departments; whether the prices charged are proper and whether the prices of materials are regular as ordered and contracted for under the charter. Under the direction of the common council the auditor has entered into agreements with newspapers other than the official papers for charges to be made for publication of city notices; he enters into contracts or understandings with different trades of the city who
 
 *339
 
 may perform services in various departments of the city for any purpose fixing the prices to be allowed for such services, makes deductions from bills, changes the prices charged for other items, determines the correctness of all bills presented against the city and certifies the amount of interest to be paid upon city bonds.
 

 The justice at Special Term held that the function of the auditor of the city of Buffalo was a mere clerical position, that he was a subordinate to the comptroller and the comptroller’s office. To review the various reasons assigned for the conclusions reached would extend this opinion to too great length. We think the decision was erroneous. We fail to find in the charter,ordinances or record any provision tending to disclose supervisory authority by any officer or head of a department over the auditor. True his appointment and removal is provided for, but so far as a discharge of the duties imposed upon him by the charter and ordinances is concerned, he is not amenable to the mayor, comptroller or any other officer of the city. The opinion of the justice at Special Term states that the amendment to the charter in 1909, section 17, empowered the common council to “reduce the functions of the auditor to zero.” The fact conceded, it appears that the common council did not do so, but on the contrary by the enactment of ordinances defining the duties of the position and clothing the officer with extensive powers made the auditor an important officer of the city. Neither does the fact that the auditor is not empowered to audit the salaries of city officers and employees, or claims for damages arising from the negligence of the city, render him the occupant of a clerical position. Salaries and compensation of officers and employees of a municipality are fixed charges, provided for by the common council annually, and are contractual in their nature, the right of compensation and of payment being fixed by ordinances. Claims, therefor, are not presented to the city and the practice of auditing
 
 *340
 
 is not essential for such charges. As to claims for negligence, the term “audit” is not applicable; such claims being for unliquidated damages arising from alleged negligence on the part of the city, are placed in charge of the proper officer, the corporation counsel.
 

 Municipal corporations annually expend large sums of money- for various purposes by contract or otherwise, and it is -principally to that class of expenditures that the term “audit” is applicable. The ordinances require claims against the city, other than for salary, to be made out in a specified way, to be properly verified and certified, and impose upon the auditor the duty to enforce compliance with the ordinances in that regard. They also require the auditor to certify that the claim is correct, that it is a just claim and obligation of the city, due and payable. Before the auditor can make such a certificate he must examine the claim, and if needs be have a hearing upon the same, and determine whether or not by contract or purchase the labor or materials have been obtained under proper authority, and whether the amounts charged therefor are reasonable, and if unreasonable to fix allowances therefor, and finally to adjust, determine and settle the validity of the claim and the amount for which the city is liable thereon. If it were contemplated that the auditor was to rely upon the. certificate of the head of the department, why the necessity of the office of auditor
 
 %
 
 Why should not the common council act immediately upon the certificate of the head of the department ? On the contrary, the auditor is clothed with power to compel attendance of claimaints and the production of books and papers, and has authority to examine the claimants under oath as to claims presented. The imposition of such duties and the conferment of such power would not indicate the character of the position occupied by the auditor as one of a clerical nature, but rather that of an independent city officer. The -auditor is required to keep books in which shall be
 
 *341
 
 entered all accounts and claims presented to him for audit, with a note of the action taken by him upon each. He has the employment of one clerk in his department with as many more as shall from time to time be authorized by the common council. The record discloses that there are three clerks in the auditor’s office, reported and certified by the auditor to the civil service commission.
 

 It would be unreasonable to hold that the auditor was a clerk in the office of the comptroller of the city, and that the comptroller was to be deprived of the appointment of subordinate clerks to a clerk in his office.
 

 Had the applicant been appointed to a clerkship by the auditor, and asserted his rights as a veteran upon removal without a hearing, the court could not compel the comptroller of the city to reinstate him to a position to which the comptroller was not vested with the power of appointment or removal.
 
 (People ex rel. Tate
 
 v.
 
 Dal
 
 ton, 158 N. Y. 204.) The proceeding, if one existed, would be against the one clothed with .the power of appointment and removal, namely, the auditor.
 

 We have pointed out the principal duties imposed and the authority conferred upon the auditor at sufficient length to show that the same are imposed by law and exercised by the auditor as an independent officer charged with the performance of specified public duties, irrespective of any other officer of the city, and within the principles laid down in the
 
 Jacobus
 
 and
 
 Fonda
 
 cases, we conclude that the office of auditor of the city of Buffalo is not a subordinate position, and the appointment of the defendant Gleason to such an office by the comptroller was justified.
 

 The orders of the Special Term and Appellate Division should be reversed, with costs in both courts to defendants.
 

 Willard Bartlett, Oh. J., Werner, Hiscock, Ohase and Collin, JJ., concur; Cuddeback, J., not sitting.
 

 Orders reversed, etc.