In the Matter of the Application of JOHN J. TIERNEY, Appellant, for a Peremptory Mandamus Order against CHARLES W. WYNNE, as Commissioner of Public Safety of the City of Mount Vernon, N. Y., and Others, Respondents.

Second Department, May 9, 1924.

Municipal corporations — mandamus to compel reinstatement of petitioner as lieutenant of police in city of Mount Vernon — petitioner is discharged veteran of United States Navy — under Mount Vernon charter (Laws of 1922, chap. 490), § 117, board of estimate and contract has power to determine number, class and grade of policemen — board provided for additional lieutenant and petitioner was appointed after competitive examination — at same time office of captain was created to which another lieutenant was promoted — later board of estimate and contract passed resolution rescinding prior resolution creating offices of captain and lieutenant but at same time recreated office of captain — captain who was demoted to lieutenancy by rescission of resolution was reappointed captain leaving lieutenancy vacant — petitioner is entitled under Civil Service Law, §§ 11, 22, to be reinstated as lieutenant to fill vacancy — board of estimate and contract had power under Mount Vernon charter (Laws of 1922, chap. 490), § 117, to create position of lieutenant.

The petitioner is entitled to be reinstated as lieutenant of police in the city of Mount Vernon under sections 11 and 22 of the Civil Service Law, since it appears that he is an honorably discharged veteran of the United States Navy; that prior to his appointment as lieutenant he was sergeant in the police department; that the board of estimate and contract which, under section 117 of the charter of the city of Mount Vernon (Laws of 1922, chap. 490) is given the power to determine the number of officers and members of the police department and the classes and grades into which they shall be divided, passed a resolution which

was approved by the mayor creating an additional office of lieutenant, and also creating the office of captain; that a lieutenant was promoted to the office of captain and the petitioner after a competitive examination was appointed lieutenant; that thereafter the budget prepared by the board of estimate and contract, which included the petitioner's salary as lieutenant, was adopted by the common council; that after a change in the city administration, the board of estimate and contract passed a resolution rescinding the resolution creating an additional lieutenant and a captain, but at the same time recreated the office of captain; that the captain who was demoted to the office of lieutenant by the rescinding resolution was reappointed as captain under the resolution recreating that office and his reappointment left a vacancy in the office of lieutenant.

After the passage of the rescinding resolution, the petitioner was demoted to sergeant and as soon as the captain who was demoted to lieutenant was reappointed to that office, thereby creating a vacancy in the office of lieutenant, the petitioner became entitled under sections 11 and 22 of the Civil Service Law to be transferred to the position of lieutenant.

The board of estimate and contract had the power under section 117 of the Mount Vernon charter (Laws of 1922, chap. 490), to create the offices of captain and lieutenant under the provision which gives them the power to determine the number of officers and members of each of the departments of police and fire and the classes and grades into which they shall be divided, and the provision in the same section to the effect that the police and fire departments shall, as to membership and component parts, remain as constituted at the time the charter was enacted until the same shall be changed by the action of the common council, refers to the continuation of the fire and police departments as then existing, and the division of the forces throughout the city into precincts or fire stations.

APPEAL by the petitioner, John J. Tierney, from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 3d day of March, 1924, granting the defendants' motion to dismiss the petition and denying the petitioner's motion for a mandamus order.

*Jeremiah D. Toomey,* for the appellant.

*Hugh M. Hewson, Corporation Counsel,* for the respondents.

KELLY, P. J.:

The petitioner, an honorably discharged veteran of the United States Navy — Philippine Insurrection — prior to July 4, 1902 (Civ. Serv. Law, § 22), applied upon his verified petition for a peremptory mandamus order requiring the defendants, officers of the city of Mount Vernon, to reinstate him as a lieutenant in the police department of the city. On the return of the order requiring defendants to show cause why the mandamus order should not be made, the defendants, filing no return or answering affidavits, moved for the dismissal of the petition and the denial of the application on the ground that the petition was insufficient

in law because it appeared therefrom that the petitioner had never been legally appointed to the position of lieutenant in the police department, and that if petitioner had been legally appointed he had been legally removed and, therefore, was not entitled to the relief prayed for. The learned judge at Special Term granted the defendants' motion, dismissed the petition and denied petitioner's application for a mandamus order. From this order the petitioner appeals. The learned corporation counsel says in his points that the facts are fully set forth in the petition and must be taken as undisputed.

For a number of years the petitioner had been a sergeant in the Mount Vernon police department. The city of Mount Vernon since January 1, 1923, has been governed by a special charter (Laws of 1922, chap. 490), and the sections applicable to the controversy are numbered 117 and 118.

" § 117. Constitution of police and fire departments. The police and fire departments shall, as to their membership, and component parts, remain as now constituted until the same shall be changed by action of the common council. The board of estimate and contract has power at all times to determine the number of officers and members of each of said departments and the classes and grades into which they shall be divided. The common council may pass ordinances not inconsistent with law for the government of the police and fire departments, and regulating the powers and duties of their officers and members. The commissioner shall appoint, as vacancies in said departments occur, all officers and members thereof, and classify and apportion them into grades to conform to such ordinances.

" § 118. Terms of office. All members of the police and fire departments, subject to the power of removal hereinafter specified, shall hold their respective offices during good behavior or until by age or disease they shall become permanently incapacitated to discharge their duties."

It is alleged in the petition that in November, 1923, the board of estimate and contract, at a legally constituted meeting, adopted a resolution directing the commissioner of public safety of said city to create an additional office of lieutenant and an additional office of sergeant in the police department and the resolution was thereafter approved by the mayor. Under the provisions of the Civil Service Law the position of lieutenant in the police force was in the competitive class, and as the result of a competitive examination the petitioner, then a sergeant, was appointed a lieutenant. At a subsequent meeting in November, 1923, the board of estimate and contract also created the position

of captain of police, and one Silverstein, a lieutenant in the department, was appointed as captain. Pursuant to the provisions of the city charter, the board of estimate and contract in November, 1923, made and submitted to the common council of the city a proposed budget for the year 1924 which included the office of additional lieutenant to which petitioner had been appointed with the increased salary attached to the position; the common council adopted the budget so prepared and submitted, and the tax to provide for the salary was levied and is in course of collection as provided in section 85 of the charter. The petitioner's salary as lieutenant was $2,964 per annum, payable monthly, instead of his previous salary of $2,464 as sergeant. From the date of his appointment in November, 1923, down to February 15, 1924, petitioner alleges that he performed his duties as lieutenant, his name appeared on the monthly payroll prepared by the commissioner of public safety and approved by the municipal civil service commission, as a lieutenant. Deductions were made from his monthly salary for his contribution to the police pension fund of the city of Mount Vernon created by law, and on retirement from the police force petitioner would be entitled to a pension from said fund equal to one-half of his salary. The Civil Service Law (§ 22) prohibits the removal of a veteran such as petitioner except for incompetency or misconduct upon stated charges. Under section 118 of the city charter (*supra*) all members of the police department were entitled to hold their office during good behavior or until by age or disease they should become permanently incapacitated to discharge their duties

The petitioner alleges as his grievance:

" 30. That on February 8th, 1924, said Board of Estimate and Contract aforesaid, at a meeting thereof, passed the two following resolutions:

" ' 1. WHEREAS, the Board of Estimate and Contract on November 13, 1923 (after election) passed the following resolution: " *Resolved*, that the Commissioner of Public Safety be, and he hereby is authorized and directed to create an additional office of Lieutenant and an additional office of Sergeant in the Police Department of the City of Mount Vernon." And WHEREAS the Board of Estimate and Contract on November 23, 1923, passed the following resolution: " *Resolved*, that the Commissioner of Public Safety be, and he hereby is authorized and directed to create a Captain of Police in charge of the Detective Bureau in the Police Department of the City of Mount Vernon."

" 'And WHEREAS, the Commissioner of Public Safety has replied to the Board that the Department of Public Safety has reached a

place in the administration of its duty where the lives and property of Mount Vernon are greatly jeopardized by reason of the fact that there is a great disproportion of officers as compared to patrolmen, and that the results of the promotion by the aforesaid resolution has resulted in a grave situation at certain hours, and WHEREAS, it has been demonstrated that the proper guarding of the City requires at least thirty-nine patrolmen which cannot be provided for in the present year's budget, and WHEREAS, the readjustment of the force that would result by the rescinding of the resolutions in question would provide a possible four (4) patrolmen for duty where it is most urgently needed.

" ' *Now, therefore,* be it resolved, that each and every one of said resolutions, be and the same is hereby wholly rescinded and annulled, and the additional positions and salaries thereby created be, and they are hereby, abolished and the Commissioner of Public Safety be and hereby is requested and directed to restore the members of the Police Department affected to the positions occupied by them respectively, on November 5th, 1923.

" ' 2. *Resolved,* that the Commissioner of Public Safety, be and he hereby is authorized and directed to create a Captain of Police in charge of the Detective Bureau in the Police Department of the City of Mount Vernon.'

" Said resolutions were both passed within a few moments of each other and were both thereafter duly approved by the Mayor of said City."

While on the face of the petition it is the same board of estimate and contract, it is suggested in the points of counsel that by reason of a change in the city government the board functioning in February, 1924, was a new board under a new city administration. I have grave doubt whether in the absence of a return or answering affidavits the self-serving recitals in the resolution of February, 1924, can be taken as evidence. They are not statements of fact, but the conclusions of the commissioner of public safety or of the board itself. It will be noted that having assumed to rescind the resolution of November, 1923, creating the office of captain of police and to abolish the office, the board at the same time recreated the office of captain of police. And petitioner alleges that the board in February, 1924, reappointed Silverstein as captain of police. Now, entirely aside from petitioner's claim that the action of the board in February, 1924, in demoting him was illegal, when the board in February, 1924, reappointed Silverstein as captain of police they created a vacancy in the office of lieutenant. And it would seem that in any event under the Civil Service Law the veteran petitioner, demoted from lieutenant, was entitled to the

position thus made vacant. It is expressly provided in the Civil Service Law (§ 22) that in case the veteran's position shall become unnecessary or be abolished for reasons of economy or otherwise, the veteran " shall not be discharged from the public service, but shall be transferred to any branch of the said service for duty in such position as he may be fitted to fill, receiving the same compensation therefor, and it is hereby made the duty of all persons clothed with power of appointment to make such transfer effective. The burden of proving incompetency or misconduct shall be upon the person alleging the same." In case of a removal, a statement of the reasons therefor shall be filed in the department or office where he had been employed, and whenever the office or position is abolished or made unnecessary the veteran's name must be sent to the State Civil Service Commission which shall place his name upon a list of suspended employees for the office or position or for the class of work in which they have been employed, or for any corresponding or similar office, position or class of work, and to certify the said persons for reinstatement or re-employment in the order of their original employment before making certification from any other list. (Civ. Serv. Law, § 22.) It is the duty of each municipal civil service commission of each city to enforce the Civil Service Law of the State. (Id. § 11.) If we pass the alleged illegality in the demotion of the petitioner, we find that by the same resolution of February 8, 1924, passed at the same time, the board of estimate and contract authorized the commissioner of public safety to create the office of captain of police. It is alleged that having demoted the petitioner from lieutenant to sergeant, they demoted one Silverstein who had been created a captain in November, 1923, from captain to lieutenant. Immediately they recreated the office of captain and forthwith appointed Silverstein to that office, and Silverstein has since continued to act as captain. Silverstein was one of the four lieutenants serving before November, 1923. It would seem that his appointment as captain left a vacancy in the position of lieutenant, and under the express provisions of the Civil Service Law (§ 22, *supra*) it was their duty to transfer the veteran petitioner to that position. When on February 8, 1924, they demoted Silverstein from captain to lieutenant, they certified that a lieutenancy was necessary. When they promoted him to the office of captain I think the petitioner had the right to be appointed to the vacancy thus created. It is the policy of the State to give statutes preferring and protecting veterans in public positions a liberal construction. (*Matter of Seeley* v. *Stevens*, 190 N. Y. 158; *Matter of Stutzbach* v. *Coler*, 168 id. 416.)

The learned corporation counsel argues that the board of estimate

and contract in November, 1923, had no power to create the additional position of lieutenant in the police department. He says this power is vested in the common council under section 117 of the charter (*supra*). Passing the fact that the board in February assumed that they had the power to create the office of captain of police, I do not agree with the contention of the corporation counsel. The police department as to membership and component parts shall " remain as now constituted until the same shall be changed by action of the common council," but " The board of estimate and contract has power at all times to determine the number of officers and members of each of said departments and the classes and grades into which they shall be divided."

The provision in the section that the police and fire departments shall, as to membership and component parts, remain as now constituted until the same shall be changed by the action of the common council, must be read with the sentence immediately following which vests the executive control and management of the departments, " the *number of officers and members of each of said departments and the classes and grades into which they shall be divided,*" in the board of estimate and contract newly constituted by the charter of 1922. It is provided in the new charter (§ 71): " Determination of positions and salaries. The board of estimate and contract, except as otherwise provided by law, shall have authority to fix the salaries or compensation, and determine the positions and numbers of all city officers and employees of each office, board and department." It seems to me that the language of section 117 providing that the " membership, and component parts " of the police and fire departments shall remain as now constituted, that is, as constituted at the date of the passage of the charter, until changed by action of the common council, has reference to the continuation of the fire and police departments as then existing, the division of the forces throughout the city into precincts or fire stations. It is the duty of the court to give effect to the entire section. Prior to the enactment of the new charter all these matters and the management and duties of the police force were left with the common council. (Old Charter [Laws of 1892, chap. 182], tit. 8, § 206 *et seq.*) The police department was in control of a chief of police whose duties were prescribed by the common council and who " subject to the special directions of the common council, shall direct and control the police officers in the discharge of their official duties." (Id. § 208.) Under the old charter the common council or aldermen, two from each of the five wards, were authorized to fix and determine the compensation of all officers of the city (Id. § 166, subd. 6), and they were vested with executive as well as legislative powers. In the new

charter this was changed; their duties were limited to legislative acts (Laws of 1922, chap. 490, art. 5) and the executive management of the city government was vested in the mayor and in such executive officers and departments as were created by the act or thereafter created by law (Id. § 60). A board of estimate and contract was created (Id. § 70), consisting of the mayor, the comptroller and the president of the common council, which was vested with plenary power, not only as to fixing the salaries and compensation and the positions and numbers of all city officers and employees of each office, board or department (Id. § 71), but also with relation to city contracts for municipal improvements, and all heads of departments having control of expenditures were required to submit their estimates of the amounts required to carry on the government to the mayor, who was required to lay the same before the board of estimate and contract (Id. § 79). The annual estimate of the amount required to carry on the city government was to be prepared by the board of estimate and contract on or before November fifteenth, and by them submitted to the common council for approval, but it was provided: " The common council shall not have the power to diminish or reject any item which relates to salaries, the indebtedness or estimated revenues, or the sums estimated as necessary to pay the tax to be levied within the city for State and county purposes, or the sums lawfully payable within said fiscal year upon judgments; nor shall the common council increase any item for any purpose contained in said estimate." It will be perceived that the board of estimate and contract, composed of the mayor, comptroller and president of the common council, was the active managing executive authority of the city under the new charter. It was vested with authority to prescribe the number of subordinates in the department of public safety (Id. § 114), the department of health (Id. § 132), the department of law (Id. § 147), the purchasing department (Id. § 165), the various city departments (Id. §§ 105, 114, 132, 147, 165, 222), and I have already referred to the provision that the board was granted the power to " fix the salaries or compensation, and determine the positions and numbers of all city officers and employees of each office, board and department." (Id. § 71.) With this plenary executive supervision it seems to me there is nothing inconsistent or ambiguous in the provision of the new charter (§ 117) with reference to the police and fire departments, " The board of estimate and contract has power at all times to determine the number of officers and members of each of said departments and the classes and grades into which they shall be divided." I cannot agree with the corporation counsel that this power was reserved to the common council. Such claim

is opposed not only to the plain language of section 117 of the new charter but to the entire scheme and system of the new charter as compared with the old.

But it also appears that the resolution of November 12, 1923, creating the office of an additional lieutenant was duly approved by the mayor of the city and that the petitioner having passed the competitive examination prescribed by the municipal civil service commission was on November thirteenth appointed a lieutenant by the commissioner of public safety, but when the budget and estimate for the conduct of the city government for the year 1924 was prepared and submitted by the board of estimate and contract *and submitted to the common council* for approval as provided in the charter *it included the wages or salary of the five lieutenants of police, including the petitioner,* and the common council " duly and legally adopted the tax budget, so-called, for year 1924," and a tax to meet the expenditures has been levied and paid or is in process of payment. So it would appear that if the common council had any power in the matter they have approved and adopted the action of the board of estimate and contract in promoting the petitioner to a lieutenancy. Respondents' point III is that " If the Board of Estimate and Contract had authority to create new positions in the Police Department, it had equal authority to abolish such positions." It had such authority but subject to the provisions of the Civil Service Law, and as I have already stated there is nothing before the court by way of return to show their reasons for abolishing the office held by the petitioner. The mere self-serving recitals in the resolution of February 8, 1924, are not sufficient.

I reach the conclusion that in November, 1923, the petitioner was duly appointed to the position of lieutenant of police; that in the absence of answering affidavits or return filed there are no facts before the court justifying or explaining his demotion. While the petitioner does not expressly charge that the action of the board in demoting him was in bad faith, he was entitled to the protection of the Civil Service Law, and if the conclusions of the commissioner of public safety or of the board recited in the resolution of February, 1924, were justified by existing facts, which are not alleged, it would seem that the spirit and intent of the Civil Service Law required the defendants to set forth the reasons for their action which the petitioner challenges as illegal. In any event, upon the reappointment of Silverstein as captain a vacancy was created in the office of lieutenant to which the petitioner was entitled under the letter and spirit of the Civil Service Law (§ 22, *supra*).

The order dismissing the petition and denying petitioner's motion for a peremptory mandamus order should be reversed upon the law

and the facts and the motion granted, with fifty dollars costs and disbursements to the petitioner, appellant.

Rich, Jaycox, Manning and Young, JJ., concur.

Order dismissing petition and denying petitioner's motion for a peremptory mandamus order reversed upon the law and the facts, and motion granted, with fifty dollars costs and disbursements to the petitioner, appellant.