J. B. TUSANT, Appellee, v. CITY OF DES MOINES et al., Appellees; BERT L. ZUVER, Appellant.

No. 45761.

NOVEMBER 18, 1941.

REHEARING DENIED JANUARY 23, 1942.

Carl J. Stephens and Ben C. Buckingham, for appellant.

Casper Schenk and H. W. Hanson, for appellee J. B. Tusant.

Herrick, Sloan & Langdon, for appellee Board of Supervisors.

HALE, J.—This suit is brought to determine whether or not the plaintiff, J. B. Tusant, is entitled to the office of city assessor of Des Moines, under the provisions of chapter 60, Code of 1939. An appeal was brought by plaintiff in the district court of Polk county to review the action of the three taxing bodies—the City Council of the City of Des Moines, Board of Supervisors of Polk County, and the School Board of the Independent School District of Des Moines—in the matter of the appointment of the defendant Bert L. Zuver to the office of assessor under the provisions of chapters 202 and 203 (being S. F. 3, as amended by S. F. 286), Acts of the Forty-ninth General Assembly.

It is not disputed that plaintiff is an honorably discharged sailor, as required by said chapter 60 when preference is claimed thereunder. He claims that as such he is entitled to the office, and that the above three taxing bodies acting as an appointing body, constituted as such under the said chapter 202 as amended, acted illegally in appointing Bert L. Zuver as city assessor, for the reason that they failed and refused to comply with the provisions of the soldiers' preference law (said Code chapter 60). To this complaint the defendants Zuver and the Board of Supervisors demurred on the ground that the soldiers' preference law is not applicable to the position of city assessor of the City of Des Moines. This demurrer was overruled; defendants Zuver and the Board of Supervisors elected to stand on their demurrer, and the cause was remanded by the court to the appointing board; from this ruling these defendants have appealed. Plaintiff Tusant also perfected an appeal on the ground that the district court, instead of remanding, should have entered an order directing his appointment as said assessor. This will be referred to later.

The first error complained of is the overruling of grounds 1 and 3 of the demurrer which assailed the complaint (notice of appeal) for the reasons: (1) that the soldiers' preference law does not apply to the head of a department where said head of a department is vested with discretion and is not subject to direction, supervision, or control of the appointing body or anyone else; that the office of city assessor is an office or department of which the assessor is the head, and that in the exercise of his duties as such he is vested with powers of a

judicial, quasi-judicial, and discretionary nature, requiring the exercise of judgment and discretion in the performance thereof; that he is vested with the power to appoint deputies, and with the powers and duties usually vested in the head of such department and that therefore the office of assessor does not come within the provisions of the soldiers' preference act as set out in chapter 60, Code of 1939, and that the plaintiff is not therefore entitled to preference; (2) that the court has no jurisdiction of the subject matter of this appeal in that the soldiers' preference act is not applicable to the head of an office, vested with discretion and subject to no supervision, direction, or control of the appointing body or anyone else. The other error complained of, and discussed hereafter, is the overruling of ground 2 of the demurrer, which sets out that the provisions of S. F. 3 as amended are in conflict with and repugnant to the provisions of the soldiers' preference act.

From the foregoing statement it will be seen that the question for our consideration on this appeal is whether or not the soldiers' preference law (chapter 60, Code of 1939) is applicable to the appointment of a city assessor provided for in chapter 202 as amended, Acts of the Forty-ninth General Assembly. Chapter 60, Code of 1939, contains sections 1159 to 1165, inclusive, section 1159 being as follows:

"In every public department and upon all public works in the state, and of the counties, cities, towns, and school boards thereof, including those of cities acting under special charters, honorably discharged soldiers, sailors, marines, and nurses from the army and navy of the United States in the late civil war. Spanish-American war, Philippine insurrection, China relief expedition, or war with Germany, who are citizens and residents of this state, shall, except in the position of school teachers, be entitled to preference in appointment, employment, and promotion over other applicants of no greater qualifications."

Section 1162.1 provides for appeal to the district court from any refusal to allow such preference to any person entitled thereto. Chapter 202 of the Acts of the Forty-ninth General Assembly, which became effective by publication February 20, 1941, prescribes the method of selection of a city

assessor in cities having a population in excess of 125,000. The material parts of such statute are as follows:

"Section 1. Within thirty (30) days from the taking effect of this Act, in cities having more than one hundred twenty-five thousand (125,000) population, the city council, the school board and the county board of supervisors each shall appoint at a regular meeting by a majority vote of the members present, one qualified person to serve as a member of an examining board to give an examination for the positions of city assessor and deputy assessors. This examining board shall organize as soon as possible after its appointment, with a chairman and secretary. * * *

"Section 3. Not later than thirty (30) days after its appointment, the examining board shall give notice of holding an examination for assessor by posting a written notice in a conspicuous place in the city hall and at one other public place, stating that at a specified date not more than sixty (60) days nor less than thirty (30) days from the posting of said notice, an examination for the position of city assessor will be held at a specified place. Similar notice shall be given at the same time, by one publication of said notice in a newspaper of general circulation in the city. * * *

"Within fourteen (14) days from the holding of such examination, it shall certify to the city council, the board of supervisors and the school board, the names of all persons who in its determination, shall have passed with a grade of not less than seventy (70) per cent in such examination. Said list shall be in force and effect for two (2) years from the date of certification.

"Section 4. Not later than seven (7) days after receipt of this list, the mayor of the city shall by written notice, call a meeting of the members of the board of supervisors, the school board and the city council, at the city hall or other specified public place, to appoint the city assessor from this list. Such selection shall not be made unless a majority of the members of two or more of said three taxing bodies are present. The mayor shall act as chairman of the meeting. The majority vote of the members present of each separate taxing body in

favor of a candidate, shall count as one vote toward the selection of the city assessor.

"The assessor shall be chosen by an approving vote of not less than two (2) out of three (3) taxing bodies. The physical condition, general reputation of the candidates and their fitness for the position as determined by the examination provided for in section three (3), shall be taken into consideration in making such selection."

The representatives of the three taxing bodies constituted an examining board, and in compliance with the provisions of section 1 of the act, met on June 17, 1941, and reported the names of five persons who had passed the examination with a grade of 70 per cent or more, which list included the plaintiff Tusant and the defendant Zuver, it appearing by the record that Zuver's percentage was 84.6 and Tusant's 86.2. On June 24, 1941, the three taxing bodies met for the purpose of selecting a city assessor, at which meeting the plaintiff Tusant received the vote of the City Council of Des Moines, and the defendant Zuver received the votes of the other two bodies and he was selected. From this action of the appointing board the plaintiff Tusant appealed to the district court.

■ There is no appeal from the appointment provided for in chapter 202, Acts of the Forty-ninth General Assembly (the assessor law), but there is such appeal provision in the soldiers' preference law, Code, chapter 60, section 1162.1. If the latter act is not applicable to the office of city assessor, there would be no jurisdiction in the district court or in this court to consider such an appeal. The case therefore resolves itself into and must be determined by the question heretofore stated: Does the soldiers' preference law apply to the office of city assessor in cities of more than 125,000 population, provided for by chapter 202 of the Acts of the Forty-ninth General Assembly as amended?

While the various parts of chapter 60 of the Code have been considered by this court in numerous cases, none has presented the question here raised. The new city assessor act was only adopted in February of this year. The question, however, has been determined by the supreme courts of other states having substantially the same statutory provisions as

our Code chapter 60. In New York, in the case of People ex rel. Jacobus v. Van Wyck (1897), 157 N. Y. 495, 502, 504, 52 N. E. 559, 561, the question arose as to the inclusion in the law of a position such as the one in controversy here, in a statute similar in all respects to our Code chapter 60. See Allen v. Wegman, 218 Iowa 801, 809, 254 N. W. 74, 79. This New York law was known as section 1, chapter 821, Laws of 1896, and, like our own, excepted from the operation of the statute "the position of private secretary, cashier, or deputy of any official or department." This was an action of mandamus on the relation of Jacobus, against Van Wyck as mayor of the city of New York. It related to the office of assessor at the time the government of the city was changed in accordance with the new charter. It involved the application of the veterans' act—as stated, substantially the same as our own. The question was whether or not a veteran properly qualified was subject to removal. The decision cites the previous case of People ex rel. Fonda v. Morton, 148 N. Y. 156, 42 N. E. 538, and follows the ruling of that case, which held that the act applied to employees of every grade in the public service or on the public works of the state, and the cities, towns, and villages thereof, but only as to subordinate positions; and the opinion states that this interpretation of the statute is in accordance with the general understanding of it and is borne out by the title of the act. The case holds that the statute "is limited in its operations to those engaged in the public employment, as that term is ordinarily used, which does not include the more important municipal offices."

The case holds further:

"The incumbent of the office of assessor is inferior in rank to that of the mayor by whom he is appointed; but he is not subject to the direction of the mayor, or to any one else, in the discharge of the very important and quasi judicial duties pertaining to his office. His duties are enjoined by statute, and are within a smaller compass than those placed upon the mayor by the same act; but, within the limits defined by the statute for each officer, the one is not more independent in the discharge of his duty than the other. * * * The test

by which to determine whether they are subordinates is not whether a review of such of their determinations as are quasi judicial may be had, but whether, in the performance of their various duties, they are subject to the direction and control of a superior officer, or are independent officers, subject only to such directions as the statute gives.''

The holding was that the act did not apply to officers such as a member of the board of assessors, and, for the reasons given, it was held that the veterans' act had no application to the position.

The New York cases are reviewed in In re Christey (1914), 211 N. Y. 333, 105 N. E. 419, which opinion discusses and approves the holdings in People ex rel. Fonda v. Morton, supra, and People ex rel. Jacobus v. Van Wyck, supra. The Christey case applied to the position of auditor of the city of Buffalo, and held it to be within the principles laid down in the Jacobus and Fonda cases, and that the auditor was not protected from removal by the statutes protecting veterans from removal from positions in the public service.

The question again arose in the case of Mylod v. Graves (1937), 274 N. Y. 381, 9 N. E. 2d 18, which was a proceeding to compel the defendants to reinstate the plaintiff in the position of appraiser-attorney in transfer tax matters for Dutchess county. The opinion cites the preceding cases above referred to, and reviews the duties of the tax appraiser, and concludes that, in view of the nature of his duties and the right to appoint a deputy, as an independent official the petitioner did not come within the provisions of the veterans' act.

Minnesota also has a soldiers' preference law, the provisions of which are similar to our own, and it also has been interpreted as to the positions covered thereby. In the case of State ex rel. McOsker v. City Council of Minneapolis (1926), 167 Minn. 240, 241, 242, 208 N. W. 1005, 1006, the question for determination was whether or not the soldiers' preference law applied to the office of city clerk. The city clerk of Minneapolis is an officer elected by ballot requiring the affirmative vote of a majority of all members of the council. He is empowered to appoint an assistant city clerk. His duties are prescribed by statute. He is not subject to the direction of

the council. His salary is an incident to his office. He takes an oath and holds his office for two years, and has charge of his office and all employees therein. And the opinion held that he is the head of his department.

The opinion quotes a provision similar to our own, as follows:

" 'Nothing in this act shall be construed to apply to the position of private secretary or deputy of any official or department, or to any person holding a strictly confidential relation to the appointing officer.' "

The opinion states:

"It is plain that the position of the assistant clerk would not come within the operation of the act. If not, why may we say the Legislature intended to have the law applicable to the superior position—the head of the department? The statute says that no person holding a 'position' shall be removed. The exclusion last quoted herein uses the term 'position,' which is not an office. Nor does a public officer occupy a place of employment. * * * If the act applies to the office of city clerk, it would also apply to the department of public welfare * * *, and to the city planning commission * * *, and the civil service commission * * *. We do not think the Legislature intended to restrict the appointment of these officials to ex-service men who apply for the appointments. * * * The original New York act used the word 'employment' in the title, not the word 'appointments,' but this distinction is of little significance. The New York law was subsequently amended so that it is now substantially a duplicate of our law, and in its present form has been construed as indicated."

The opinion states that a law of similar import in the state of New York "which uses the word 'position' and refers to employment has been construed as not applicable to the heads of departments, but only to all subordinates in such public service and relating to such employees as are not vested with discretion." Citing, People ex rel. Hall v. Saratoga Springs, 35 App. Div. 141, 54 N. Y. S. 1083; People ex rel. Fonda v. Morton,

supra; People ex rel. Jacobus v. Van Wyck, supra; In re Christey, supra.

It further states that:

"Appellant relies upon the somewhat contrary authority of Shaw v. City of Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, 9 Ann. Cas. 1039, but that case involved only the constitutionality of the Iowa act and the propriety of mandamus as a remedy, and, in so far as it is an inferential authority in support of appellant, it is not persuasive."

An examination of the Iowa case cited shows that the analysis in the McOsker case is correct. It involved the appointment of a city clerk, which the court refers to as a "minor municipal office." The question of the duties, and the applicability of the soldiers' preference law thereto, was not an issue, but only constitutional questions. Whatever might be the ruling in that case, it could not apply here.

In State ex rel. Michie v. Walleen (1932), 185 Minn. 329, 241 N. W. 318, the supreme court of Minnesota construed the soldiers' preference statute in relation to the office of county engineer, holding that under the duties prescribed by the statute the engineer was the head of the department, and, as such, the soldiers' preference statute was without application. Citing various cases. See also 21 I. L. R. 135–138–139; 43 C. J. 609, par. 992. So far as we have discovered, there is no authority to the contrary in the construction of statutes similar to that of this state. Plaintiff assails these rules, and especially the Van Wyck decision as one prompted by partisan motives; but in an Iowa case—Herman v. Sturgeon, 228 Iowa 829, 293 N. W. 488—the opinion cites and is in part based upon Stutzbach v. Coler, 168 N. Y. 416, 61 N. E. 697, written by the same judge and sustaining the law, when assailed for another reason.

Plaintiff cites no authority contrary to the doctrine announced in the Minnesota and New York cases, but argues that the Iowa statutes, unlike those of New York and Minnesota, are to be liberally construed. We cannot agree with plaintiff that the construction in the New York cases differs from that

of Iowa. See Tierney v. Wynne (1924), 209 App. Div. 401, 406, 204 N. Y. S. 836, 840. The court said:

"It is the policy of the state to give statutes preferring and protecting veterans in public positions a liberal construction." Citing cases.

We do not think that any rule of construction can lessen the effect of the Van Wyck case. In support of the rule of construction, plaintiff cites section 64 of the Code, and various Iowa cases, and there is little dispute as to the proposition as to construction advanced by him.

Plaintiff further urges that the soldiers' preference law applies to all appointments, in every public department of Iowa cities, citing a number of cases as to the application of the statute involving various positions such as janitor at the statehouse and at the courthouse, policeman, yard man at the state capitol. These cases are not persuasive since there can be no question that the law was intended to apply to the positions mentioned therein. He also cites the case of Maddy v. City Council of Ottumwa, 226 Iowa 941, 285 N. W. 208, but that case was not concerned with the question as to whether or not the office came within the provisions of the soldiers' preference law, and in that case, and in Shaw v. Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A., N. S., 825, 9 Ann. Cas. 1039, the question did not arise.

Plaintiff devotes considerable time to his claim that the act is unambiguous and admits of no judicial construction, and that since the assessor is not expressly excluded from the benefits of the statute he must be included. It is the duty of the court in construing a statute of this kind not only to determine the meaning but to determine the application, and in this we must be guided by what we hold to be the intent of the legislature. We say and know that the statute was not intended to cover every office or position, appointive or otherwise, for there are express exceptions in the statute. No one can deny that it has a good and useful object, and that it has been beneficial to the persons for whom it was enacted. That they are entitled to such preference as can be given under the statutes is beyond question. But equally, no one would go so far as to say that there should be a preference for every position. That a veteran's

service has tended to increase his qualifications may not be disputed, but the lawmakers of the state realized that there must be some discretion exercised by the appointing officers as to certain positions requiring discretion and judgment. Plaintiff urges that since the office of assessor is not expressly excepted from the benefits of the statutes it must be included. This is applying a strict construction to the statute, in contravention to the terms of section 64 of the Code and contrary to the rule which plaintiff himself invokes in the construction of this statute. See Bay v. Davidson, 133 Iowa 688, 694, 111 N. W. 25, 27, 9 L. R. A., N. S., 1014, 119 Am. St. Rep. 650. As to such positions or offices as do not come within the purview of the preference act, exceptions are made as to positions of confidence or as to deputies, for a deputy stands in the position of his principal. See 1 Bouvier's Law Dictionary, 8th Ed., 851; Funk & Wagnall's Standard Dictionary; Webster's New International Dictionary; also definitions in 12 Words and Phrases 198 et seq.; Byrnes v. Windels, 265 N. Y. 403, 193 N. E. 248—in all of which a deputy is defined as one appointed as a substitute for another, who has power to act for him, in his name and on his behalf. And so with the deputies of the assessor, as prescribed by statute, who act for and in place of the city assessor as to a portion of the duties imposed upon him. Their duties are practically the same. The chief deputy performs the duty of the assessor in the event of a vacancy, and yet the deputies are exempted by the statute. It is our opinion that when the deputies are so exempt, performing as they do the duties of the head of the department, the law would not have application to the head of the department whose duty it is to appoint the deputy. We hold that the legislature, in the enactment of the statute, did not intend to apply and did not apply the law to those who occupy the position of departmental heads. In this case the assessor is not only the head of the department, he is the department itself, and, in conjunction with his deputies, who may act in his place and stead, he performs all the duties of the department. The language of the statute is "*in* every department and upon all public works." It does not include every appointive office. If the statute is construed as contended by plaintiff, it would necessarily follow that every office required to be filled by the

governor, not excepting appointments to fill vacancies, would be included. Manifestly it was not the intent of the legislature that the law should so apply. And we hold that it does not apply here. Such has been the holding in every case where the question arose. No case cited by plaintiff refers to any other authority in support of his argument.

The second ground for reversal raised by the defendants is that the soldiers' preference act was repealed by the enactment of chapter 202, Acts of the Forty-ninth General Assembly. This question was referred to in Hahn v. Clayton County, 218 Iowa 543, 552, 255 N. W. 695, 699, wherein it was held that there was no repugnancy between the soldiers' preference law and section 4644-c19, Codes, 1931, 1935 (section 4644.17, Code, 1939), relating to county engineers, even though the latter law had no general repealing section, as is the case with the assessor law. Under our holding, however, there is no occasion to determine this question or to hold that the city assessor law conflicts with the soldiers' preference law. Neither requires the appointment of the veteran regardless of qualifications, nor does the appointment of assessor depend solely upon the written examination. The assessor law holds that "The physical condition, general reputation of the candidates and their fitness for the position as determined by the examination * * * shall be taken into consideration in making such selection." And the soldiers' preference law says they shall "be entitled to preference in appointment, employment, and promotion over other applicants *of no greater qualifications.*" (Italics ours.) Neither statute deprives the appointing board of the right to determine the qualifications of the candidates who have passed in the examination. This discretion is lodged in them—a discretion not lightly to be interfered with. In the absence of an abuse of discretion the appointing body is free to exercise its judgment. No showing or claim is made in this case of any such abuse. This is the view taken by this court in Boyer v. Mayor, (Iowa), 113 N. W. 474 (not officially reported). And such is the holding of the court in passing upon the validity of an appointment under the soldiers' preference law in Patterson v. Boron, 153 Mich. 313, 314, 116 N. W. 1083, 1084, wherein it is said:

"This right to appoint imposed on respondent the duty of determining that his appointee possessed the requisite qualifications for the office."

And so in State ex rel. Taggart v. Addison, 78 Kan. 172, 174, 96 P. 66, this language is used in reference to the soldiers' preference law:

"The validity of the law is established by the former decision [92 P. 581], and it should be so administered as to secure the intended benefits to this honored class of citizens, to which the nation and the state owe so much. On the other hand, efficient service to the state, and to the counties, cities, and towns thereof, must not be sacrificed. The language of the act itself suggests both of these considerations, and even those for whose benefit the law was intended would insist as strenuously upon the latter as upon the former."

And quoting from the former opinion in this same case, 76 Kan. 699, 707, 92 P. 581, 584, determining the law in this case:

"The determination of the appointing board or officer as to the qualifications of the applicant involves official discretion, and, when made fairly and in good faith, is final."

And the plaintiff in his cross-appeal insists that the presiding judge, instead of remanding the case to the appointing board, should have entered an order reinstating the plaintiff in the office. Since our holding is contrary to the contentions of the plaintiff as to the application of the law, no ruling is necessary upon this cross-appeal.

The office which is the subject of this controversy is one of extreme importance. We have only to take notice of our own records in past years to realize that the decisions of the taxing authorities of Des Moines have created much litigation, at great expense not only to the city but to individuals. Appeals have filled the records of the courts, and taken their time, by the hundreds. It was to remedy this evil that chapter 202 of the Acts of the Forty-ninth General Assembly was enacted. This statute reposed in the three bodies representing the three local bodies most affected by assessments and representative

of the whole community at large—the city, the county, and the schools—the power and the right to select an assessor who would fairly and properly value the taxable property. No complaint is made that they have unfairly or unjustly abused the discretion reposed in them.

For the reasons given under our holding that the soldiers' preference law has no application to this appointment, we feel it our duty to sustain the appointment, and are compelled to reverse the holding of the district court.—Reversed.

MILLER, C. J., and SAGER, BLISS, GARFIELD, and WENNERSTRUM, JJ., concur.

STIGER and MITCHELL, JJ., dissent.

STIGER, J. (dissenting)—I respectfully dissent from the majority opinion which is accomplished by judicial legislation.

The title to the Soldiers' Preference Law, chapter 9, 30th General Assembly, reads:

"AN ACT regulating appointments, employment, and removals in the public departments and upon public works in the state of Iowa, and the counties, cities and towns thereof."

Sections 1159 and 1163, Code, 1939, read in part as follows:

"1159 * * * In every public department and upon all public works in the state, * * * honorably discharged soldiers * * * shall, except in the position of school teachers, be entitled to preference in appointment, employment, and promotion over other applicants of no greater qualifications.

"1163 Removal—certiorari to review. No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except * * * ", etc.

Section 1165, Code, 1939, reads:

"1165 Exceptions. Nothing in this chapter shall be construed to apply to the position of private secretary or deputy

of any official or department, or to any person holding a strictly confidential relation to the appointing officer.''

The issue is whether the legislature in enacting the soldiers' preference law intended to limit the preference in appointment, employment and promotion of ex-service men over other applicants to subordinate positions. Such limitation is not expressly stated in the act. I find nothing in the act or its history that justifies an incorporation of the limitation into the act by construction.

It seems to me the law clearly includes all public positions, including the head of a department, filled by appointment or employment subject to the specific exceptions of positions involving confidential relationship between the appointing officer and appointee or employee found in section 1165.

I agree with the following statement of the trial court:

''Each section and the entire soldier's preference Act should be construed together. This act provides that with certain exceptions, applicants who are soldiers, shall have the preference over other applicants for appointment who have no greater qualifications. There is nothing complicated about the soldier's preference law. It is set forth in plain and simple language. It is easy to understand and not difficult to construe or interpret. If the soldier applicant has qualifications equal to or better than the non-soldier he is entitled to the preference. If the non-soldier proves himself to be better qualified to perform the duties of the office he is entitled to the appointment. This applies to all public appointments, except those which are specifically excepted. * * *

''If plain and unambiguous statutes can be dwarfed and twisted so as to express only the whims and fancies of courts and judges, then the people will lose confidence in the soundness and the integrity and honesty of the courts and our liberty and freedom will end. Respect for law is the strongest bulwark of constitutional government. It is a sentiment that should be so precious to the American citizen as it is essential to American prosperity and freedom.''

The construction placed upon the law by the majority of the court would be sound if the act stated that in every public

department honorably discharged soldiers shall be entitled to preference in appointment, employment and promotion over other applicants of no greater qualifications, provided, however, that the provisions of this chapter shall not apply to the head of a department but shall apply only to subordinate positions which do not require the exercise of discretion by the appointee or employee. But I find no such express or implied limitation in the law.

In Babcock v. Des Moines, 180 Iowa 1120, 1123, 162 N. W. 763, 764, the court said:

"But the statute is highly remedial, and intended to give special and deserved privileges to one class of our citizens in consideration of services rendered the country in time of need. We should construe it, when within reason possible, so that its evident purpose may be accomplished."

In Herman v. Sturgeon, 228 Iowa 829, 835, 293 N. W. 488, 491, Justice Bliss, speaking for the court, has this to say about a soldier's preference:

"It is a recognition of and a slight recompense for the services performed and the sacrifices suffered by these men. It is also a legislative appreciation that these men by their service under arms have acquired those habits of industry, obedience, and fidelity so necessary as qualifications for any public office or service in times of peace."

A majority of the court believes the legislature intended to express to ex-service men the generous appreciation of the state of Iowa for their service under arms, for sacrifices suffered, for services rendered the state and nation in time of need, by giving them a preference in appointment and employment to subordinate positions only, limiting the preference to positions or employment requiring the exercise of substantially no discretion—as stated by the trial court "positions requiring plenty of muscle and no brains." I cannot believe the legislature intended to say to ex-service men that the privileges and preference deserved by them for services rendered the nation consisted only of inferior, subordinate positions. When it passed the act it was, of course, aware

that ex-service men, citizens and residents of this state, constituted a fair cross-section of the culture and intelligence of the citizens of Iowa; that they occupied some of the highest and most important positions in the business, political, social and religious life of the state; that in the ranks of ex-soldiers and sailors there were men fully qualified to fill any elective or appointive office in the state. There is no suggestion in the title to the act or the law that suggests the legislature intended to recognize and recompense ex-service men for services performed under arms by giving them a preference to subordinate positions requiring only manual labor or no discretion or responsibility.

I do not see how my interpretation of the act would jeopardize the efficiency of administration of the affairs of state government. It seems to me that a careful selection of public servants is assured and safeguarded by the provisions of sections 1159 and 1161 which provide that the soldier must have equal or greater qualifications than other applicants and must be found, after investigation, to be of good moral character and able to perform the duties of the position applied for.

I will refer to some of the cases relied on by the majority opinion. In People ex rel. Jacobus v. Van Wyck, 157 N. Y. 495, 503, 52 N. E. 559, 561, the question was whether the office of assessor was within the veterans' act. The case holds the act did not include the more important municipal offices, did not include officers vested with discretion in the performance of their duties. The court states this view is required by the statute when read in connection with its title, "An Act Respecting the *Employment* of Honorably Discharged Union Soldiers, Sailors", etc. (Italics supplied.) However, the Van Wyck case, supra, rests primarily upon sheer dictum found in the case of People ex rel. Fonda v. Morton, 148 N. Y. 156, 42 N. E. 538, which bluntly states that the veterans' act applies only to subordinate positions.

The Minnesota court follows the New York rule and, as stated in the majority opinion, has held that the soldiers' preference laws do not apply to the head of a department. However, in Shaw v. Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A., N. S., 825, 9 Ann. Cas. 1039; Hahn v. Clayton

County, 218 Iowa 543, 255 N. W. 695; Maddy v. City Council of Ottumwa, 226 Iowa 941, 285 N. W. 208, the court sustained appointments to the offices of city clerk, city engineer and police judge. Apparently, however, the question whether the act applied to the head of a department or only to subordinate positions was not directly presented to the court in said cases. I am not in favor of adopting the New York rule and the reason for the rule expressed in the Van Wyck case.

I would affirm.

MITCHELL, J., joins in this dissent.