J. W. DAEGES, Appellee, v. JOSEPH F. BEH, Appellant.

*Clark, Byers & Brunk*, for appellant.

*Ernest M. Miller*, for appellee.

DE GRAFF, J.—This action involves a recovery of damages for the breach of an alleged contract. The primary question to be determined in the first instance is whether or not there was a contract. If there was no contract, then there could be no breach thereof.

It appears that the plaintiff visited the farm of the defendant, and asked the tenant on said farm if certain corn then on the farm was for sale. The tenant told the plaintiff that the corn belonged to the landowner, the defendant in this case. At that time, the plaintiff said he would give Mr. Beh, the owner, 60 cents per bushel, if he wanted to sell the corn, and that he would buy 1,000 bushels at that price. The plaintiff had in mind the corn then in the east end of the crib. The tenant volunteered to write, and did write Mr. Beh and asked

him if he would take 60 cents a bushel for 1,000 bushels of corn. Later, the plaintiff was informed by the tenant that the defendant, Beh, would take 60 cents per bushel for 1,000 bushels of the corn. Thereupon, the plaintiff instructed the cashier of the State Bank of Portsmouth, Iowa, to send $100 to the defendant, as part payment on 1,000 bushels of corn which the plaintiff claimed to have bought from Mr. Beh.

On the same day (April 25, 1927), the cashier wrote a letter to Mr. Beh, inclosing a cashier's check for $100, stating that the check was to be applied as a down payment on 1,000 bushels of corn bought by plaintiff at the Bauer place (Beh's farm). The letter also stated that the balance was to be paid to Beh when the shelled corn was delivered to plaintiff's place. On April 26, 1927, Beh acknowledged receipt of the letter, with the cashier's check inclosed for $100, ''to apply on the purchase of one thousand bushels of corn. I will accept this as part payment, altho the Bauer boys write me that they sold him one thousand bushels of corn at 60 cents—Daeges [plaintiff] to pay the cash now and take the corn after they have time to deliver it—right after corn planting.''

It is quite clear that this letter was not a counter offer. It was not a repudiation of the alleged contract, but, as indicated, an acceptance of part consideration for the corn under contract.

The end of the corn-planting season, as disclosed by the record, in that vicinity was on or about May 26, 1927. On May 26, 1927, the same cashier, upon the request of the plaintiff, sent the balance of the purchase price, $500, to the defendant, Beh, stating that it was the balance due on the 1,000 bushels of corn which had been purchased by the plaintiff, and asked, on behalf of the plaintiff, that the corn be delivered within the coming week, as Daeges (plaintiff) ''claims to be in need of the corn.'' On May 27, 1927, the defendant, Beh, wrote a letter to the cashier of the Portsmouth Bank, refusing to accept the $500 check, and in returning said check, stated that: ''From what the Bauer boys [tenants] say, Mr. Daeges has not lived up to the agreement.'' In this letter Mr. Beh also said that he would ''not let the boys deliver any corn until Daeges makes some satisfactory agreement.'' No corn was delivered, and, on June

23, 1927, the petition in this case was filed, predicated on a breach of contract in relation to the sale of the corn.

In defining a contract, it is not practicable to state all the operative facts that are necessary or sufficient, or to state all the legal relations that are created by such facts. Contracts, The American Institute of Law, Chapter 1, page 17. The term "contract" is generic, and this indicates that there are different varieties. In the instant case, we are dealing with an *informal,* bilateral contract. This implies that there are mutual premises between the two parties to the contract. Was there a manifestation of mutual assent, which, it may be conceded, is essential to the formation of the contract? It is not necessary that the parties are conscious of the legal relations which their words or acts give rise to, but it is essential that the acts manifesting assent shall be done intentionally, which means that there must be a conscious will to do those acts. The manifestation of mutual assent may consist wholly or partly of acts other than written or spoken words. Usually the manifestation of mutual assent takes the form of an offer or proposal by one party, accepted by the other party. There was an offer in the case at bar, and it is clear that there was an acceptance. The only trouble is that, after the acceptance of a part payment of the purchase price agreed upon, the promisee was inclined to think that what his tenant told him was slightly different from the terms disclosed by the promisor when the partial payment was made and accepted. There was no rejection or renunciation at that time, and not until the final payment was made by the plaintiff was there an attempt to repudiate the contract, and for the reason, as claimed by defendant, that the plaintiff-purchaser had not lived up to the agreement, in the light of what the tenants of the defendant, Beh, had told the latter.

It is presumed that an offer invites the formation of a bilateral contract by an acceptance amounting, in effect, to a promise by the offeror to perform what the other requests. We construe the offer, under the facts in question, as definite in its terms. A certain number of bushels of corn were to be sold, and the other party was to pay a definite price per bushel. The only question apparently in dispute is when the purchase price was to be paid. The defendant clearly understood, when the part payment in the sum of $100 was paid to him, that it

was a down payment on the sale of this particular corn, and he also knew that the balance was to be paid when the shelled corn was delivered at the purchaser's place. This check was received and accepted as part payment by the defendant. The only complaint the defendant made in accepting same was to the effect that he understood from his tenants on the farm where the corn was raised that the purchaser was to pay cash "now" and take the corn right after corn-planting time. No further complaint was made until "after corn-planting time," when the purchaser sent the vendor the balance due. Defendant then repudiated the contract. The attempt to revoke came too late.

The record discloses that, after the return by the defendant to the bank of the $500 draft, the plaintiff sent a registered letter to the defendant, which demanded the delivery of 1,000 bushels of corn to the plaintiff within 10 days after date. This letter was received by the defendant. It is also shown that the defendant retained the $100 payment made April 25, 1927, and never made tender of same to the plaintiff until after the expiration of the ten days following plaintiff's demand for the corn, to wit, May 31, 1927. This tender was refused by plaintiff. Thereafter, there was no word or communication from the defendant concerning this corn transaction. As long as the defendant retained the down payment, it may not be claimed that he had foreclosed his offer, and that it was no longer open for acceptance by the plaintiff.

We sustain, therefore, the finding of the trial court that there was a contract, and that a jury question was presented as to the damages suffered for breach of said contract, based on the difference between the value of the corn at the agreed price and the market value of corn at the end of the corn-planting season in the neighborhood of the defendant's and the plaintiff's farms, and that the jury should consider, as a part of the damages, if any, the $100 which was paid to the defendant by plaintiff.

The judgment entered is—*Affirmed.*

ALBERT, C. J., and STEVENS, MORLING, and WAGNER, JJ., concur.