ARNOLD MILLER, Appellant, v. GUY W. HANNA et al., Appellees.

No. 43344.

FEBRUARY 13, 1936.

Gillies & Schaefer, and Mabry & Mabry, for appellant.

Edward J. Grier, for appellees.

KINTZINGER, J.—On December 28, 1934, the appellant, age 46, an honorably discharged soldier of the World War, filed an application with the board of supervisors of Wapello county for the position of steward of the Wapello County Home, under the Soldiers' Preference Law of Iowa. There were ten other applications for the position, but appellant was the only one filing under the Preference Act. On January 15, 1935, the board met and appointed one Lester W. Corbett, who was not an ex-service man, to that position.

Thereafter, on May 17, 1935, a writ of mandamus was issued, and a hearing was had thereon before the court. The defense urged was that the power to select the steward was a discretionary power with the board of supervisors, and that the appointee had greater qualifications than the appellant. At the close of the testimony, the district court found that the requirements of the act were met, and plaintiff's petition was dismissed. Hence this appeal.

Section 1159 of the Code of 1931, being the Soldiers' Preference Law, provides that:

"In every public department and upon all public works in the state, and of the counties, * * * honorably discharged soldiers * * * [in various wars, including the] war with Germany, * * * shall * * * be entitled to preference in appoint-

ment, * * * over other applicants of *no greater qualifications.*" (Italics ours.)

Section 1161 of the Code of 1931 provides that:

"When such soldier, * * * shall apply for appointment or employment under this chapter, the officer, board, * * * whose duty it is * * * to appoint * * * some person to fill such position * * * *shall, before appointing or employing anyone to fill such position* * * * *make an investigation as to the qualifications of said applicant* for such place or position, and if the applicant is of good moral character and can perform the duties of said position * * * as hereinbefore provided, said * * * board * * * shall appoint said applicant to such position * * * or employment * * *." (Italics ours.)

Section 1162 of the Code of 1931 provides that:

"A refusal to allow said preference * * * shall entitle the applicant * * * to maintain an action of mandamus *to right the wrong.*" (Italics ours.)

These statutes impose a duty upon the board, first, *to make an investigation as to the qualifications* of the ex-service applicant *before making the appointment;* and, second, that, if it appears from such investigation that the qualifications of other applicants *are no greater than those of the honorably discharged soldier,* he shall be entitled to the appointment, if otherwise qualified. At the trial of the case below, it was shown without dispute that the appellant was an honorably discharged soldier of the World War, that he was of good moral character, and that he had qualifications fitting him for the position.

The only questions for our consideration are, first, whether the board made an investigation as to appellant's qualifications, and, second, whether the board acted arbitrarily and abused its discretion in finding that the qualifications of the appointee were greater than those of appellant.

■■■ I. The appellees contend that the power of making the appointment vested them with a discretion with which the courts cannot interfere. It is the well-settled rule of law in this state and elsewhere that, where the performance of an official act involves the exercise of a discretion on the part of the appointing officer or board, the discretion of such officer

or board cannot ordinarily be controlled by the courts; they can only be directed to act, leaving the matter as to what particular action they will take to their determination. Otherwise the discretion of the court would be substituted for the discretion of the appointing board, and the courts will not, as a general rule, interfere with this discretion. 18 R. C. L. 124, section 38.

This rule under our statutory action of mandamus is based upon sections 12440 and 12441 of the Code. Section 12440 provides that:

"The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

Section 12441 provides that:

"Where discretion is left to the inferior tribunal or person, the mandamus can only compel it to act, but cannot control such discretion."

This rule is also recognized in this state by the following cases: Coy v. City Council of Lyons City, 17 Iowa 1, 85 Am. Dec. 539; Clark v. Board of Directors, 24 Iowa 266; State v. Morris, 43 Iowa 192; Scripture v. Burns, 59 Iowa 70, 12 N. W. 760; Christy v. Whitmore, 67 Iowa 60, 24 N. W. 593; Milwaukee Malt Ext. Co. v. Ry Co., 73 Iowa 98, 34 N. W. 761; Preston v. Board of Education, 124 Iowa 355, 100 N. W. 54; Kinzer v. Directors of Ind. School Dist., 129 Iowa 441, 105 N. W. 686, 3 L. R. A. (N. S.) 496, 6 Ann. Cas. 996; Neilan v. Board of Directors of Independent School District, 200 Iowa 860, 205 N. W. 506; Addison v. Loudon, 206 Iowa 1358, 222 N. W. 406.

This rule has also been applied in this state and elsewhere in cases involving the Soldiers' Preference Law, in which it is held that, if the board, in the exercise of a sound discretion, determines that the qualifications of the ex-soldier applicant are not equal to those of the appointee, the judgment of the board cannot be interfered with in mandamus by the courts. McBride v. City Council of Independence, 134 Iowa 501, 110 N. W. 157; Ross v. City Council of Sioux City, 136 Iowa 125, 113 N. W. 474; Arnold v. Wapello County, 154 Iowa 111, 134 N. W. 546;

Boyer v. Mayor and City Council of Creston, 113 N. W. 474;
18 R. C. L., section 180; Keim v. U. S., 177 U. S. 290, 20 S. Ct.
574, 44 L. Ed. 774; 10 L. R. A. (N. S.) 825, note.

In McBride v. City Council of Independence, 134 Iowa 501,
loc. cit. 503, 110 N. W. 157, 158, this court said:

" * * * before making the appointment the board or offi-
cer required to select is bound to make an investigation as to
the applicant's qualifications. If these are not equal to those
of the other persons under consideration, he is not of the class
of persons * * * in whose favor the preference was created.
If of equal qualification, however, he would not necessarily be
entitled to the position or office, for all might prove to be dis-
qualified, and therefore to render his employment or appoint-
ment obligatory and enforceable by proceedings in mandamus,
it is further exacted that he must be of good moral character
and able to perform the duties of the position applied for. * * *
appellant argues that the provision relating to equal qualifica-
tions is general and must give way to the more particular speci-
fications enumerated later on, and that bare competency and
good moral character constitute the 'equal qualifications' men-
tioned in the forepart of the section. * * * The trouble with
appellant's contention is that the language employed * * *
does not bring the statute within this rule; for preference is
conferred only on such veterans as possess qualifications equal
to those possessed by other candidates for the office * * *. For
no other is the preference provided. That some persons are
better able to and will perform the duties of a position with
greater efficiency than others, who are barely competent to dis-
charge them, is recognized by every one, and it was not the
design of the legislature to deprive the state or any of its govern-
mental subdivisions of the very best service attainable. To this
end equality in the matter of qualifications is a condition to
awarding any preference."

In Ross v. City Council of Sioux City, 136 Iowa 125, loc.
cit. 127, 113 N. W. 474, 475, this court says:

"A board may be compelled to act, but its discretion can-
not be controlled in such a proceeding. The statute gives to
the complaining party a remedy by mandamus to right the
wrong involved in a refusal to allow the preference provided

for; but this can mean no more than that the board shall be required to determine whether the applicant is entitled to the appointment which is sought. * * * McBride v. City Council, 134 Iowa 501, 110 N. W. 157, and Boyer v. Mayor and City Council of Creston, 113 N. W. 474.''

In Arnold v. Wapello County, 154 Iowa 111, loc. cit. 114, 134 N. W. 546, 547, the court distinctly says:

''The duty of appointment involves the exercise of judgment and discretion which the court cannot forbid. The question of the relative merits of the contestants is not triable *de novo* before the trial court, nor before us. We can only interfere when the record discloses bad faith and abuse of discretion in a legal sense. * * * McBride v. City Council of Independence, 134 Iowa 501, 110 N. W. 157; Ross v. City Council of Sioux City, 136 Iowa 125, 113 N. W. 474.''

In the case of Boyer v. Mayor of Creston, 113 N. W. 474, the evidence shows that the ex-service appellant and the one appointed to the position were present the day the appointment was made, and that at that time evidence was heard as to the qualifications of each, and following the hearing an appointment was made. The court there says:

''The preference act says that an ex-soldier having *equal qualifications* shall have preference in appointments, etc. Who is to determine this matter of qualification, and whether that of the ex-soldier is equal? Without doubt, the appointing power; the official—person or body—responsible, directly or indirectly, to the people for the proper performance of the duties which are the subject of the appointment. And, of necessity, that official—person or body—must exercise its own discretion and judgment in determining the matter in hand and making choice among the applicants. * * * Where discretion is lodged in an official, the courts are not authorized to interfere with the exercise thereof, *except in cases of clear abuse*. This is no more than to say that such official may not act arbitrarily and unwarrantably, or in disregard of evidence clearly and unmistakably pointing to a contrary result.''

II. There is, however, a well-recognized exception to this rule, under which mandamus will lie to review the action of

the board, where there has been an arbitrary abuse of the discretion reposed in the board.

"If there is an arbitrary abuse of discretion, the courts recognize that this is an exception to the general rule, and mandamus may issue if there is no other adequate remedy, though the result is that the court is called upon to review the exercise of a discretionary power. * * * It is not accurate to say that the writ will not issue to control discretion, for it is well settled that it may issue to correct an abuse of discretion, if the case is otherwise proper. A public officer or inferior tribunal may be guilty of so gross an abuse of discretion, or such an evasion of positive duty, as to amount to a virtual refusal to perform the duty enjoined, or to act at all, in contemplation of law; and in such a case a mandamus would afford a remedy where there was no other adequate remedy provided by law." 18 R. C. L. 126, section 39; 18 R. C. L. 257, section 180, note 20; Ex parte Bradley, 7 Wall. 364, 19 L. Ed. 214; People v. Healy, 230 Ill. 280, 82 N. E. 599, 15 L. R. A. (N. S.) 603; Shaw v. City Council of Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, 9 Ann. Cas. 1039.

Upon the question of the court's right to interfere by mandamus, this court, in Shaw v. City Council of Marshalltown, 131 Iowa 128, loc. cit. 139, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, 9 Ann. Cas. 1039, said:

"The case thus presented was admitted by the demurrer * * *. The act itself provides for a remedy by mandamus, and we think there is no merit in the appellees' suggestion that the writ will not lie."

So in the case at bar, if the facts disclosed by the record show that the board abused its discretion in failing to make the investigation imposed upon it by the statute, and arbitrarily made the appointment complained of without exercising its sound discretion, then the same rule would apply in this case, and the remedy by mandamus will lie to "right the wrong."

That this court can interfere when the record shows bad faith and abuse of discretion is recognized in the following Iowa cases: McBride v. City Council of Independence, 134 Iowa 501, 110 N. W. 157; Arnold v. Wapello County, 154 Iowa 111, 134 N. W. 546; Boyer v. Mayor of Creston, 113 N. W. 474.

In Arnold v. Wapello County, 154 Iowa 111, 134 N. W. 546, it was held there was no abuse of discretion, and that the court could not interfere, but said:

"*We can only interfere when the record discloses bad faith and abuse of discretion in a legal sense.*"   (Italics ours.)

In the Boyer v. Mayor of Creston case, 113 N. W. 474, the court found that there was no abuse of discretion, and therefore no warrant for interference by the court, but said: "As in all other cases, * * * where discretion is lodged in an official, the courts are not authorized to interfere with the exercise thereof, *except in cases of clear abuse. This is no more than to say that such official may not act arbitrarily and unwarrantably, or in disregard of evidence clearly and unmistakably pointing to a contrary result.*"   (Italics ours.)

As somewhat bearing on this case, see Harwood v. Quinby, 44 Iowa 385.

The only question involved in this case, therefore, is whether or not there was an abuse of discretion by the board of supervisors in making the appointment in question.   As hereinabove set out, section 1161 of the Code *makes it imperative* upon the board of supervisors *to make an investigation of the qualifications* of the ex-service applicant.

At the trial of this case below, appellant introduced twelve witnesses in whose employment he had been since leaving his home on the farm at the age of twenty-two.   The testimony of all of these witnesses disclosed that appellant had been engaged in several different lines of work, some of which might have qualified him for the position of steward of the poor farm, and others not.   About eleven years prior to making application for this position, appellant was employed upon the poor farm in question, under a former superintendent, for a period of two years.   During that period he had sole charge of the operation of the farm for a period of one and one-half years, and was well acquainted with all the duties required of the steward.   The man who was superintendent during that time so testified, and said that in his opinion appellant had all of the qualifications necessary to fully perform all of the duties as steward of the poor farm.   No member of the board, however, interviewed any one of appellant's former employers with reference to his qualifications for the position applied for.

The statute requires the board to make an "investigation of applicant's qualifications *before appointing or employing* anyone to fill the position," but it makes no provision as to the nature of the investigation to be made, and neither prescribes nor limits the same.

It is therefore apparent that the nature of the investigation to be made is left entirely to the determination of the board. Its action upon the kind of an investigation to be made cannot be controlled by the courts. The legislature has left this matter open, and a public or private investigation, if one is actually made by the board of supervisors, would meet the requirements of the statute.

Appellees, however, claim to have made an investigation. Mr. Hanna, one of the members of the board, said that he was a member of the board that appointed Mr. Corbett; that they had about ten applicants, among whom was Mr. Miller, who applied under the Soldiers' Preference Law. He further said "we investigated all applicants to see which one had the best qualifications in our minds." He also said that he was acquainted with Mr. Miller, had known him for the past twenty years, and had talked to several businessmen in town regarding Mr. Miller. One of these men told him that he thought Miller was a good fellow, but he did not think he was qualified for the position at the county farm. The evidence also shows that the members of the board spoke to each other regarding Miller's farming experience, and also spoke to one of his neighbors about his farming experience. Hanna said that he knew that Miller had worked for a good many different parties, but that he thought that was possibly a hindrance, and they wanted a man who would settle down and attend to business. He testified that he thought Corbett's qualifications were greater than those of appellant for the position sought.

This member of the board also testified that, if he had known all of the people for whom Miller had worked, and if they had given him the highest kind of recommendations, and told him he was upright, conscientious, and an outstanding business man and farmer, he does not think he would have changed his opinion regarding the appointment, because "we investigated him pretty thoroughly. We didn't happen to talk to the ones" for whom he worked before.

Mr. Horan, another member of the board, also testified that

he made an investigation as to the qualifications of Mr. Miller. He also testified that he thought the qualifications of Mr. Corbett, the appointee, were as great or greater than those of the appellant. It was admitted, however, that the members of the board never sat as a board of investigation and never called witnesses before them to determine the qualifications of the applicants.

Mr. Smith, the other member of the board, testified that the Miller farm was a mile and a half from his farm, and he passed it several times and did not think it was very well kept. He said he did not think Miller would be a good man to appoint for the county farm, because it should be kept in A number 1 shape. He also knew that Miller had been employed by a number of other employers in work which would not particularly qualify him for the position as superintendent of the poor farm. He said he did not make any investigation as to his work from the other employers because he knew Miller all of the time, and had heard rumors that he was abusive to patients in the county home; that he investigated and "figured the qualifications of Les Corbett, the man appointed, were greater and was relying on his personal knowledge at the time he voted for Corbett's appointment."

While the investigation made by the members of the board may have been more or less of a casual nature, it seems that they had determined from their own personal acquaintance with Miller, and the information received through their casual investigation, that the qualifications of Mr. Corbett, the appointee, were greater than those of Mr. Miller.

Under the Soldiers' Preference Act, the duty of making an investigation was imposed upon the members of the board of supervisors, and, as no method of making the investigation was pointed out in the law, the court cannot prescribe the nature of their investigation for them.

As it was within the discretion of the board to determine the qualifications of the applicants for the position applied for, and as they, in the exercise of such discretion, determined that the applicant appointed had greater qualifications for the position than appellant, it is beyond our power to interfere with such discretion.

It is claimed that the board abused its discretion in refusing to appoint appellant because all of the members of the board

admitted at the trial below that they would not have changed their selection, no matter what testimony might be given by appellant's former employers as to his qualifications. This does not necessarily show abuse of discretion, because they might have determined from their investigation that the person appointed had greater qualifications than those possessed by appellant, even though his former employers had made a showing before the board similar to that given in their testimony on the trial of the case below.

As the testimony shows that an investigation of some kind was made by the board, and as the testimony of appellees shows that they believed from the investigation made by them that the person appointed had greater qualifications than appellant, it is beyond our power to disturb the findings of the board. The court cannot exercise the board's discretion for them, nor can we say that from the record in this case there was such an abuse of discretion as to warrant an interference of their action by the court.

For the reasons hereinabove set out, we are impelled to find that no such abuse of discretion has been established as to warrant the court's interference.

For these reasons, the judgment of the lower court is hereby affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, PARSONS, RICHARDS, HAMILTON, ANDERSON, and POWERS, JJ., concur.