CHAS C. MADDY, Appellee, v. CITY COUNCIL OF OTTUMWA, Appellant.

No. 44396.

942

April 5, 1939.

Merrill Gilmore and Herman J. Schaefer, for appellant.

George F. Heindel and T. A. Goodson, for appellee.

HALE, J.—On April 1, 1937, the plaintiff, Chas. C. Maddy, made application for appointment to the position of police judge of the city of Ottumwa, stating in his application that he had been a resident of said city since 1904, engaged in the practice of law for the past twenty-four years and that he had also had two years experience as police judge of the city, and that he was an honorably discharged soldier of the World War.

There were a number of applicants for the position, but the city council appointed M. Harry Ziffren by resolution adopted July 6, 1937. Thereafter, on July 19, 1937, the council passed a resolution, referring to the resolution of July 6, 1937, and, in substance, stating that it had made an investigation as to the qualifications of the plaintiff for the office of police judge, and was informed that he was not well qualified by training and temperament to fill such office, and that M. Harry Ziffren was better qualified by training and temperament to perform such duties. The second resolution ratified the resolution of July 6, and the appointment of Ziffren was confirmed. It was further resolved that this second resolution should constitute the written record required by section 1161 of the Code of Iowa, 1935, of the reasons and specific grounds for the appointment of M. Harry Ziffren as police judge, and for the refusal of the council to appoint Chas. C. Maddy to said office.

Thereafter, on July 20, 1937, notice of appeal was served, which recited the foregoing facts and notified the council to appear at the August 1937 term of the district court of Wapello county. The notice further recited that Maddy was an honorably discharged United States soldier of the World War, duly qualified for the position of police judge and that the rejection of his application by the city council was wrongful and contrary to the mandate of the soldiers preference law of the state of Iowa; that the council ignored the provisions of said law and neglected

and failed to make the required investigation and record thereof and to ascertain and determine the qualifications of Maddy for said position, and failed to pass upon and determine the comparative qualifications of the applicants for the position; and that the council failed to set forth and file for public inspection the specific grounds for the rejection of plaintiff's application and the appointment of Ziffren to the office. The notice further asked that the city council's appointment of Ziffren be cancelled, annulled, and set aside, and that such order be entered by the court as might be necessary to fully correct the wrongful acts and procedure of the city council and to appoint Chas. C. Maddy police judge of the city.

Thereafter, on September 8, 1937, answer was filed by the mayor and the city council, admitting the application of plaintiff and the appointment of Ziffren; and alleging that they had made an investigation before appointing Ziffren, and had found and determined that the plaintiff was not properly qualified to serve as police judge and that M. Harry Ziffren was better qualified; also alleging that they afterwards set forth in writing and filed for public inspection the specific grounds upon which they acted.

In division II of the answer they alleged that section 1162-g1 of the Code of 1935, on which plaintiff bases his right to relief, is unconstitutional, null and void, and in contravention of section 1 of article III of the constitution of the state of Iowa; and that the selection of a police judge by a municipality is not a judicial function, and that the legislature of Iowa has no power to confer upon a court of this state authority to select a police judge for a municipality; that such selection involves the exercise of discretion on the part of the city council, which cannot be controlled by a district court. They further by amendment urged the unconstitutionality of the soldiers preference law, being chapter 60 of the Code of 1935 (section 1159 et seq.,) : First, because said chapter 60 does not fix any standard of qualifications and under the act the district court would be empowered to fix and determine what qualifications in an applicant for appointment to the office should be considered, and that such is a legislative power and not a judicial one and cannot be conferred upon a court; and second, that it would deprive the municipality of the right of local self-government.

Trial to the court was had on September 9, 1937, evidence

heard, and decree of the court entered, which decree held the provisions of the soldiers preference law constitutional, and that the plaintiff was entitled to appointment to the office, being a regularly and honorably discharged soldier of the war with Germany, and that his qualifications for the office of police judge were equal to the qualifications of any of the other applicants; that he was of good moral character and could perform the duties of the office and· was not in any manner disqualified from holding said office or performing said duties. The judgment further directed the city council to cancel and rescind all resolutions and other actions before taken appointing M. Harry Ziffren to the office, and to appoint Chas. C. Maddy to the office and to make and enter proper resolution showing said action. This judgment was signed October 5, 1937. Appeal was taken from such judgment and the matter is now before us for our consideration.

Defendant's first ground of complaint is that on the evidence plaintiff is not shown to have equal qualifications with the incumbent. A considerable amount of testimony was taken at the trial and the question of plaintiff's qualifications quite thoroughly entered into. No question was raised as to the moral character of either plaintiff or Ziffren, but the investigation made by the court was confined to their qualifications.

The plaintiff was a witness·in his own behalf and testified very fully as to his experience. He stated that he was fifty-one years of age at the time of the trial. His schooling was obtained at public schools and at a business college, and he had worked at various kinds of work and had, of late years, devoted a large part of his time to procuring evidence and assisting lawyers. He made no claim to being a trial lawyer, but stated that he had worked at various forms of work, for the express company, and in a number of other occupations. His law training was obtained by studying law with practicing attorneys.

A number of witnesses testified in his behalf, several being acquaintances, and among these witnesses were reputable lawyers of Ottumwa and other nearby cities, all of whom spoke highly of his qualifications for the position he sought.

The defendant undertook to show by the evidence that the plaintiff was not temperamentally suited for the position, and introduced evidence of certain specific instances where the plaintiff had lost his temper; but there were few of these oc-

casions and they extended over a long period of time, and were not sufficiently important to impress either the district court or this court.

The appointee Ziffren also introduced evidence, and from the testimony in his behalf it is shown that he was a man who had had the advantage of more schooling than the plaintiff, being a graduate of a law school and a college.

The testimony was long, but we have indicated the main points attempted to be brought out. The court heard the testimony and determined that the qualifications of the plaintiff were equal to those of the appointee Ziffren.

The trial court heard and saw the witnesses and determined the question of qualification favorably to the plaintiff. On examination of the very full and complete record of the testimony, we are disposed to hold with the trial court, as we think that the evidence clearly showed that each of the applicants, Maddy and Ziffren, possessed the qualifications necessary for the discharge of the duties of the office.

We feel that the court in passing upon the qualifications of the applicants was right, and that the findings of the district court should not be disturbed on appeal to this court.

II. Objection is also made by the defendant to the sustaining by the trial court of plaintiff's objection to the offer by defendant to prove that a substantial part of the time the plaintiff had been making photographs and making investigations of accident cases. There was no prejudice in sustaining plaintff's objection, as the question was asked in cross-examination and was covered by other parts of the testimony.

Defendant further alleges error of the trial court in the form of judgment rendered. It insists that the trial court, on a finding that two applicants had equal qualifications, should have remanded the case to the city council for it to make an investigation of the qualifications of all six applicants for the office of police judge. The council had already passed upon the qualifications of the other four applicants. The order of the district court was that the city council was directed and required to cancel and rescind all resolutions and other actions theretofore taken appointing Ziffren to said office, and to appoint Maddy. The defendant insists that all that could have been done would have been a remand. To have made such an order would have rendered the soldiers preference law inopera-

tive. To have proceeded as defendant insists would have resulted in interminable litigation. None of the other applicants was a soldier. If the case had been remanded to the council with directions to again investigate and determine the respective qualifications of Ziffren and Maddy, and a second appointment of Ziffren, or appointment of any other of the applicants, had been made, an appeal would have had to be taken and this procedure repeated.

To understand what would be the situation under the procedure urged by defendant, we may examine the law as it was originally and as it now provides. Prior to 1935 the remedy of a person who was refused the preference given by section 1159 of the Code was by mandamus (Code, section 1162), and our court has repeatedly held that the relief granted by mandamus consists only in requiring the council to do its duty— that is, to require an investigation and decision by the appointing body. See Ross v. City Council of Sioux City, 136 Iowa 125, 113 N. W. 474, wherein it was held that the court was limited to the compelling of an investigation.

In Arnold v. Wapello County, 154 Iowa 111, 134 N. W. 546, the holding was that the court could not control the appointment by mandamus, and could only direct and require the appointing body to make investigation and determine the comparative qualifications.

To the same effect, see Miller v. Hanna, 221 Iowa 56, 265 N. W. 127, wherein the holding was that the power of the court was only to determine whether the board had made an investigation, and whether it had acted arbitrarily or abused its discretion.

The Forty-sixth General Assembly apparently recognized the difficulty of enforcing the provisions of Code section 1162, and, by an amendment to the law which went into effect by publication on May 24, 1935, and is now shown in the Code of 1935 as section 1162-g1, provided for appeals, which were made additional to the remedy of mandamus; and now an applicant for office who meets the requirements of chapter 60 of the Code of 1935 (commonly known as the soldiers preference law) is not confined to mandamus, but may prosecute his appeal to the district court in the same manner that other appeals are taken.

The difficulty of securing action under the law as it stood before the enactment of section 1162-g1 of the Code was recog-

nized in the latest case in this court in which the law as it stood prior to such enactment was considered. See Bender v. City of Iowa City, 222 Iowa 739, 748, 269 N. W. 779, 784. This case was based upon an appointment made just prior to the time of going into effect of the new amendment, on April 3, 1935. In the opinion, written by Hamilton, J., the court reviewed various prior cases, referring especially to Miller v. Hanna, supra, which held that it was beyond the power of the court to disturb the findings of the appointing body unless there was a clear and arbitrary abuse of discretion. The Bender case holds that under the law under which it was brought, the only issue before the court was whether the appointing officer or board was justified, within the range of fair discretion, in finding on the required investigation as to relative qualifications, that the qualifications of the ex-soldier were or were not equal to the qualifications of the nonsoldier appointee. The court, however, recites:

"If this case were to be determined by the court on the weight or preponderance of the evidence, we might not be disposed to disturb the finding of the trial court, but neither this court nor the trial court can substitute its discretion for the discretion of the appointing power. Had that been the intention of the legislature, it could have clearly said so. This result might be more nearly reached under the law as it now stands, by appeal, under section 1162-g1 which was enacted by the 46th General Assembly (chapter 7, section 2) as an additional remedy (which became effective May 24, 1935), and which provides among other things that '*the court* shall receive and consider any pertinent evidence, whether oral or documentary, concerning said appointment from which the appeal is taken, and if *the court* shall find that the said applicant is qualified as defined in section 1159, to hold the position for which he has applied, said court shall, by its mandate, specifically direct the said appointing officer, board or persons as to their further action in the matter.' (Italics ours.) The enactment of this additional measure would indicate that ·as construed by the lawmakers themselves, the right of complete review on the merits was not provided by the act under the mandamus section."

The court, however, was not unanimous even as to the

holding under the mandamus proceeding, and in a dissenting opinion it was maintained that under the law as it stood prior to 1935 such a construction of the statute nullified the statute and rendered it inoperative. Citing Butin v. Civil Service Com., 179 Iowa 1048, 162 N. W. 565.

Whatever might be the rule as to the right to review under sections 1162 and 1163 of the soldiers preference law as it originally stood, that right has been enlarged by the enactment of section 1162-g1, and the powers of the court correspondingly increased. There would have been no reason for the adoption of the appeal statute if it had gone no further than merely to remand the case for reconsideration by the appointing board. We feel that under the provisions of this enactment, the court in the present case had full power to make such orders as were necessary to carry out the intent and purpose of the law as thus amended, and that in directing the appointment of plaintiff to the office in question it did not exceed its power, but made the order which was necessary for a complete ruling and decision on the case submitted.

III. One ground of defendant's objection to the judgment of the trial court is that the law as it stands is unconstitutional and in violation of the provisions of section 1 of article III of the constitution of Iowa. As reasons therefor defendant urges that the power of appointment is not a judicial power, that the statute fixes no standard of qualifications, and, being a legislative power, it constitutes a delegation of legislative power to the court; that section 1162-g1 constitutes an attempted repeal of section 6530 of the Code, which provides that the council shall appoint a police judge; and, lastly, that this granting of power to appoint deprives the community of the right of local self-government.

Section 1 of article III of the constitution provides for the division of the government into three separate parts, and prohibits any person charged with the exercise of powers belonging to one of these departments from exercising any function appertaining to either of the others, except such as are permitted by the constitution.

Defendant cites a number of cases in support of its first proposition, that the power of appointment is not a judicial power, among them being State v. Mayor, Etc. of Des Moines, 103 Iowa 76, 72 N. W. 639, 39 L. R. A. 285, 64 Am. St. Rep.

157; State v. Barker, 116 Iowa 96, 89 N. W. 204, 57 L. R. A. 244, 93 Am. St. Rep. 222; Denny v. Des Moines County, 143 Iowa 466, 472, 121 N. W. 1066, 1069.

The first of these was on authority granted to a board of library trustees to fix and determine the amount of tax for library purposes, and there could be little doubt that this was a power grant which would be in contravention of the constitution.

State v. Barker, supra, also cited, granted the district court power to appoint a board of waterworks trustees. This also was held unconstitutional. In neither case did the statute provide for the exercise of any judicial function.

The Denny case, supra, was an appeal from the action of the board of supervisors in refusing to establish a drainage district. The court in that case, we think properly, held that this was a power of the board of supervisors with which the court had no right to interfere, that the determination of the board was discretionary, of a legislative character, and not reviewable by the courts. But the court goes on to say that the function of the board of supervisors in determining the sufficiency of the petition is judicial and there is no reason why that judicial function might not have been vested in the court in the first instance had the legislature so provided. The court further states:

"It is well settled in this state that the legislature may provide for the exercise by a court of the power to judicially determine facts which are made the conditions on which authority may be exercised by officers to whom is delegated the exercise of legislative and executive power."

Other authorities cited are cases decided by the supreme court of Indiana, which we think are not in line with the general holdings of the courts throughout the country.

But we do not think that the power of appointment is exclusively a legislative or executive right. This court, in the case of Hutchins v. City of Des Moines, 176 Iowa 189, 207, 157 N. W. 881, 887, has held that the supreme court has authority to assign a district judge to membership on a board of condemnation of waterworks. In the discussion of this case the court, referring to section 1 of article III of the constitution, reviews the various functions of the three departments of government,

refers to a number of cases which assume the power of appointment to be essentially executive and which deny to the general assembly and the courts the right to appoint to any office or position not incidental to the actual discharge of their constitutional functions. But the court goes on to say:

"Another line of cases, and perhaps the larger number, proceeds on the theory that the appointment to office is not inherently or intrinsically executive in character, but that it is the exercise of a political power not conferred on any department, but depending on legislative will alone." (See cases cited.)

The court cites approvingly People v. Freeman, 80 Cal. 233, 22 P. 173, 13 Am. St. Rep. 122, and note to that case:

"The truth is, that the power of appointing or electing to office does not necessarily and ordinarily belong to either the legislative, the executive, or the judicial department. It is commonly exercised by the people, but the legislature may, as the law-making power, when not restrained by the Constitution, provide for its exercise by either department of the government, or by any person or association of persons whom it may choose to designate for that purpose. It is an executive function when the law has committed it to the legislature, and a judicial function, or at least a function of a judge, when the law has committed it to any member or members of the judiciary."

Again quoting from the Hutchins case:

"Necessarily, the functions of the different departments shade into each other, as do the colors of the rainbow, and the performance of executive duties often involves the exercise of judicial functions of even the most delicate character, and the courts frequently, in the efficient discharge of their duties, must exercise the executive function. The elements are distinct in the main, even though it is often difficult to say which predominates; and in a considerable field there is enough of each function involved to preclude the charge that the exercise of the appointing power by either is an encroachment on the exclusive domain of the other."

In the case of City of Burlington v. Leebrick, 43 Iowa 252, cited by the plaintiff, it was claimed that an act of the legis-

lature was unconstitutional in that it was an attempt to delegate a legislative power to the court in violation of section 1 of article III of the constitution. It was held, as has been held in many cases, that the right to pass upon the facts and the issues involved in a consideration of the facts would be a judicial right.

To the same effect, see In re Assessment Stock Yards Co., 149 Iowa 5, 11, 127 N. W. 1102, 1104, wherein the same question was raised that a statute which gave the right of appeal from assessment of property or to increase the assessment was unconstitutional, that it violated article III, section 1, of the constitution. The court states:

"It is, of course, true that the power to tax * * * is legislative; but the determination of questions of fact as to whether particular property comes within the statutory description and particular persons are persons required to pay taxes on property, as well as the determination of the correctness of the method pursued in any particular case, may well be and often is strictly judicial."

And this case is in line with practically all the others, which hold that the determination of questions of fact is a proper subject for judicial review.

To the same effect, see State v. Chittenden, 127 Wis. 468, 107 N. W. 500, 512, in which the court quotes from Judge Elliott's work on Practice, vol. 1, sections 245, 246, as follows:

"Where a court is empowered to investigate the law or the facts of a particular matter respecting the status of a person, or of a thing, it necessarily acts in a judicial capacity and its judgment or decree is the product of judicial power. In determining the status of a person, where by law it is required to investigate and determine that question, the court exercises judicial functions."

In the instant case the court was required to determine certain facts—that Maddy was an honorably discharged soldier, and a resident and citizen of Iowa, of good moral character; and that the appointee possessed no greater qualifications than Maddy. These were facts to be found, and the finding of such facts was a judicial function.

The power given to the court under the statute is judicial

and not in contravention of section 1 of article III of the constitution.

■ IV. The defendant urges that another reason the statute should be declared unconstitutional is that it provides no standard of qualifications for the office of police judge. The qualifications prescribed by the statute are: first, that he be an honorably discharged soldier, and that he be a citizen and reside within the place of the appointment; and second, that the qualifications shall be equal. In support of its view the defendant cites the cases of Goodlove v. Logan, 217 Iowa 98, 251 N. W. 39; State v. Van Trump, 224 Iowa 504, 275 N. W. 569; and Hubbell v. Higgins, 148 Iowa 36, 126 N. W. 914, Ann. Cas. 1912B, 822.

The first two cases refer to the delegation of legislative powers to a commission. In the third case, Hubbell v. Higgins, involving a statute for the inspection of hotels, this court held that the statute was constitutional and not an unlawful delegation of power.

The complaint that the general assembly has not defined the qualifications of a police judge, it seems to us is without merit. It would be impossible to enumerate all the qualifications necessary to hold all offices. There can be no fixed rule or yardstick as to the qualifications of appointive officers, except such rules as are laid down by statute, and in this case the only requirements or qualifications are such as are enumerated above. The standard upon which the court on appeal could act, as well as the standards upon which the council could act in making the appointment, must necessarily, within the limitations of the statute, be to a certain extent discretionary. Something must be left to the judgment and discretion of the appointing officer, whether it be the council or the court, and the court or the council acting within the requirements of section 1159 of the Code fully complies with the law.

■ V. Defendant argues that the statute (Code section 1162-g1) repeals section 6530 of the Code by implication. Section 6530 provides:

"In those cities of the first class not having a superior court, the council shall appoint a police judge."

Counsel cite a number of authorities to the effect that repeals by implication are not favored. There can be no dispute on

this proposition. But section 1162-g1 merely placed a limitation upon the power of appointment, as it did upon every appointive office to which it refers, and was no more a repeal of the provision giving the council power to appoint than would be any other provision, as, for instance, the requirement that an appointed officer must be a citizen of the United States, of the state, and a resident of the community in which the appointment is made. We see nothing in the section giving the right to appeal which invalidates the section above referred to. See State ex rel. Halbach v. Claussen, 216 Iowa 1079, 1089, 250 N. W. 195, 199, and cases cited therein.

■ VI. The final contention that the defendant makes is that the power granted the court to review the action of the council deprives the community of the right of self-government. The cases cited by defendant which have been referred to heretofore involve statutes granting administrative powers to the court, and involving no judicial inquiry. It hardly needs argument, and it is not necessary to repeat what has heretofore been said, that on questions of fact involving the application of statutes the right to judicial review cannot be questioned.

We think the following from 12 C. J., pp. 754, 755, section 174, applies to the contention made by the defendant:

"By the great weight of authority, however, and it is believed by the sounder reason, the legislatures of the several states are the repositories of plenary powers, subject only to restrictions imposed by the federal or state constitutions either expressly or by fair implication, and, within these limits, they possess full power and control over local subdivisions of the state. They may, accordingly, create, abolish, consolidate or divide such subdivisions, may control the administration of local affairs, appoint local officers, and create commissions and appoint commissioners for the exercise of the powers of local government. In the jurisdictions where this theory prevails, property of a municipality owned by it in its governmental capacity is subject to the control of the legislature." See cases cited.

The above states, in substance only, the rule that the powers of a municipality are derived solely from the grant made by the legislature; and within the constitution, and under the statute,

the legislature may prescribe the rules governing such municipalities.

Of interest in this connection is the case of State v. Manning, 220 Iowa 525, 531, 259 N. W. 213, 217, as bearing upon some of the objections urged by the defendant. In the opinion cited is a quotation from the case of Marshall Field & Co. v. Clark, 143 U. S. 649, 12 S. Ct. 495, 36 L. Ed. 294:

"The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend which cannot be known to the lawmaking power, and must therefore be a subject of inquiry and determination outside of the halls of legislation."

The case of Eckerson v. City of Des Moines, 137 Iowa 452, 465, 115 N. W. 177, 183, cited approvingly in the Manning case, supra, was an action to enjoin the board of park commissioners. The court said, in referring to section 1 of article III of the constitution, that the powers of government are divided into three separate departments—legislative, executive, and judicial —and quotes the provisions; and states:

" * * * the Constitution is wholly silent on the subject of the means by which, and the manner in which, local self-government shall be accomplished. From this comes readily the conclusion that there was committed to the general assembly, as part of the legislative authority vested in it, full and plenary power to select the agencies appropriate in its judgment to the purpose, and to clothe such agencies with powers to be exercised in manner and form as prescribed therefor." (Citing various authorities.)

The court further says:

"And all the authorities agree that, in the absence of any constitutional restriction, it is within the province of the legislature to clothe an officer or agency created by it with functions involving the exercise of powers executive, legislative, and judicial in character—one or all."

Courts are reluctant to declare legislative enactments unconstitutional and will do so only when the violation is clear, palpable, and practically free from doubt. State v. Darling, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218, and cases cited therein. See, also, Vilas v. Board of Assessment and Review, 223 Iowa 604, 273 N. W. 338; State v. Manning, supra.

The constitutionality of this statute, or similar statutes, has often been reviewed and sustained by this court and other courts. Thurber v. Duckworth, 165 Iowa 685, 147 N. W. 158; Shaw v. Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A. (N. S.) 825, 9 Ann. Cas. 1039; State ex rel. Jones v. Sargent, 145 Iowa 298, 124 N. W. 339, 27 L. R. A. (N. S.) 719, 139 Am. St. Rep. 439. We think that the adoption of section 1162-g1 has only added to the law what under the former statute it lacked —that is, the power to make effective the provisions of the soldiers preference law, to render it workable, and to carry out the intent of the legislature.

On the whole case the decision of the lower court should be affirmed.—Affirmed.

MITCHELL, C. J., and RICHARDS, HAMILTON, STIGER, SAGER, BLISS, OLIVER, and MILLER, JJ., concur.