JOHN J. MCLAUGHLIN, Appellee, v. BOARD OF SUPERVISORS OF
CLINTON COUNTY, Appellants; and HANS J. DIERKS, Appellee.

No. 44947.

OCTOBER 24, 1939.

REHEARING DENIED FEBRUARY 9, 1940.

Carroll Johnson and M. L. Sutton, for appellants.

Leon P. Molloy, for appellee John J. McLaughlin.

HALE, J.—On December 31, 1938, the plaintiff and appellee John J. McLaughlin, an honorably discharged veteran of the World War, made written application to the board of supervisors of Clinton county for the position of day janitor in the county courthouse. The board, on January 3, 1939, appointed Hans J. Dierks, a non-veteran, to that position, he receiving the vote of two of the supervisors, Ehlers and Mommsen, while the third supervisor, Witte, voted for a third candidate not a party to this proceeding.

On January 20, 1939, plaintiff filed petition for writ of mandamus, and later an amendment, in which petition and amendment the foregoing facts were set out, the plaintiff alleging that the appointee Dierks was not of greater qualifications than the plaintiff, and that plaintiff was better qualified than Dierks; that the board acted arbitrarily and unwarrantedly and in disregard of law; that said board failed to make an investigation as to the qualifications of plaintiff before the appointment and failed to set forth in writing and file for public inspection the specific grounds upon which it refused the appointment of plaintiff. Plaintiff asks for the issuance of a writ of mandamus commanding the board to discharge Dierks and to appoint plaintiff.

To this petition defendants filed answer, admitting some of the general allegations of the petition and stating that before the appointment the board had made an investigation of the qualifications of Dierks and the plaintiff and that a majority of the board determined from such investigation that the qualifications of Dierks were superior to the qualifications of plaintiff.

On these issues trial was had to the court and on June 15, 1939, judgment was rendered in favor of plaintiff and against defendants, finding that plaintiff was an honorably discharged soldier of good moral character, not disqualified from performing the duties of the position; finding further that the supervisors acted arbitrarily and unwarrantably, that they did not make a fair and impartial investigation of plaintiff's qualifications and that their conclusion, based upon such investigation as was made, and their failure to appoint plaintiff, were an abuse

of discretion. It was further found that the board failed to set forth in writing the specific grounds upon which it refused the appointment. It was then ordered that writ of mandamus issue commanding the board to discharge the day janitor, to cancel any appointment for such position, and on July 1, 1939, to forthwith appoint plaintiff to the position, to fix his salary at $100 per month, and to pay him his salary from January 16, 1939.

From this order and decree defendants appeal.

This action is brought under chapter 60, Code of 1935, known as the Soldiers Preference Law, and section 1159 of which provides that in counties, public departments, etc., honorably discharged soldiers of the various wars shall be entitled to preference in appointment, employment, and promotion, over other applicants of no greater qualifications. The statute provides in section 1161 that the appointing officer or board shall, before appointing anyone, make an investigation of the qualifications of the applicant and, if of good moral character and if he can perform the duties of the position, such applicant shall be appointed. It is further provided in said section that the "appointing officer, board or person shall set forth in writing and file for public inspection" the specific grounds for appointment or refusal to appoint. For a failure to comply with the provisions of this act the remedy provided was by mandamus:

"A refusal to allow said preference, * * * shall entitle the applicant * * * to maintain an action of mandamus to right the wrong." Code of 1935, section 1162.

■ We have recently discussed, in the case of Maddy v. City Council of City of Ottumwa, 226 Iowa 941, 285 N. W. 208, 211, the difficulty of giving prompt and effective relief, as was recognized by various decisions of this court; and the Forty-sixth General Assembly enacted an amendment to the law, now known as section 1162-g1, Code 1935, which provides for appeal. Under the provisions of Code section 1162 the power of the court is limited. Ross v. City Council of Sioux City, 136 Iowa 125, 113 N. W. 474; Arnold v. Wapello County, 154 Iowa 111, 134 N. W. 546; Miller v. Hanna, 221 Iowa 56, 265 N. W. 127. In the Arnold case it was held that the court could not control the appointment by mandamus, and could only direct and re-

quire the appointing body to make investigation and determine the comparative qualifications. In the Miller case the holding was that the power of the court was only.to determine whether the board had made an investigation, and whether it had acted arbitrarily or abused its discretion. The Maddy case was under the provisions of the appeal amendment, section 1162-g1; but. the latest decision relative to the mandamus section, 1162, prior to the adoption of the amendment, was in the case of Bender v. City of Iowa City, 222 Iowa 739, 269 N. W. 779, 786. See authorities cited therein.

In the Bender case this court in its majority opinion held that a judgment and decree in mandamus ordering the removal of the appointee and the appointment of the applicant could not be sustained, that the action in mandamus only granted to the court the power to determine "whether there has been a good faith, proper, sufficient investigation to acquaint the appointing power with the facts as to the qualifications of the applicants, and the court having found that such investigation was so made, unless it is plainly apparent that such official, in passing on the fitness of the applicants, acted arbitrarily and capriciously and contrary to the facts as plainly revealed by the testimony, it should not interfere."

The court also in the Bender case cites approvingly the case of State ex rel. Meehan v. Empie, 164 Minn. 14, 204 N. W. 572, 574, in which it is said:

"It is the duty of the appointing body to make the investigation prescribed by the statute. That duty is imposed upon it directly. Presumably it will discharge it fairly. The question of qualification or fitness is first and primarily for the appointing body. The trial court on mandamus, or this court on review, cannot substitute its own view of the fact. Only when the appointing power declines to investigate, declines to apply the law, or proceeds with manifest arbitrariness, or something equivalent thereto, can relief be had by mandamus. The court does not determine the question of fitness. Evidence of it may be competent in determining whether the appointing body applied the law at all, or, applying it, proceeded with manifest arbitrariness. It is to be assumed that the appointing body will proceed with the investigation, and will be fair. If it chooses otherwise, there is difficulty of enforcement, arising

from the inherent nature of the subject. It cannot be remedied by the court through an assumption of authority to appoint. Its power is confined within the limits which we have stated.''

The foregoing cases indicate the limits to which a court may go in an action of this nature. It is not an appeal, but a review of the action of the appointing body.

This leaves the question of whether there was in fact an investigation by the board prior to the appointment of Dierks; and if so, was the action of the board such as to show a clear and arbitrary abuse of discretion on the part of the appointing body?

That there was an investigation is shown by the evidence and by the court's decree. There was no public hearing or formal taking of evidence, but both supervisors testify to the fact that they did make inquiries. One of them had been in office and was acquainted with the work of Dierks for the three preceding years. The plaintiff also had been working as day fireman at the courthouse, and for two weeks during Dierks' vacation had performed the duties of janitor. Defendant Ehlers, who was a cousin of Dierks, had observed the work of both men. Mommsen, the other supervisor, was not in office until 1939, but stated that on inquiry he found that Dierks was regarded as a superior employee, and was more experienced. Both were acquainted with the fact that McLaughlin was an applicant, and both knew that about 24 years before, when 18 or 19 years of age, he had been indicted for rape and had been convicted of assault with intent to commit rape and sentenced to the Anamosa reformatory. Both supervisors testified that this fact had to some extent influenced their decision. Other testimony was given by the supervisors relative to inquiries and knowledge of the two men. It appears to us from the evidence that there was a good-faith investigation.

The question of the kind of investigation required was passed upon in the case of Miller v. Hanna, supra, in which the court, referring to the statute, states, 221 Iowa 56, at page 64, 265 N. W. 127, at page 131:

''It is therefore apparent that the nature of the investigation to be made * * * cannot be controlled by the courts. The legislature has left this matter open, and a public or private

investigation, if one is actually made by the board ·of supervisors, would meet the requirements of the statute.''

And again, on page 65, the court says:

''While the investigation made by the members of the board may have been more or less of a casual nature, it seems that they had determined from their own personal acquaintance with Miller, and the information received through their casual investigation, that the qualifications of Mr. Corbett, the appointee, were greater than those of Mr. Miller.''

The case holds that the court cannot prescribe the nature of the investigation, and that as it was within the discretion of the board to determine the qualifications of the applicants, and as it was in the exercise of such discretion determined that the applicant Corbett had greater qualifications, it was beyond the power of the court to interfere. See Miller v. Hanna, supra, and cases cited therein; and to the same effect, Bender v. City of Iowa City, 222 Iowa 739, page 746, 269 N. W. 779.

Having determined that there was an investigation under the requirements of the statute, it remains to be considered whether in its action the board abused its discretion and acted unwarrantably. There was a considerable amount of evidence introduced as to the qualifications of the candidates, and we cannot attempt to set out in detail all of the testimony. Various witnesses testified as to the qualifications and experience of Dierks, and others as to the qualifications of McLaughlin. As is usual, there was some conflict of testimony. Among these witnesses were officers and other persons employed in the courthouse. Evidence was also offered as to the past lives and employment of the two men. It should be remembered also that both men had been employed at the courthouse, and that members of the board had heard of and observed their work. With this evidence and knowledge of the board we are not convinced that there is such a clear showing of abuse of discretion as would warrant a court to interfere. It was the duty of the board to determine whether or not the qualifications of the two men were equal, and in the absence of such a showing of abuse of discretion the court cannot override its decision. See Miller v. Hanna, supra; Bender v. City of Iowa City, supra; and

Maddy v. City Council of City of Ottumwa, supra, with cases cited.

In the amendment to the petition complaint is made that the board, "after refusing to appoint the plaintiff herein, failed to set forth in writing and file for public inspection the specific grounds upon which it refused the appointment of the said plaintiff * * *." As shown heretofore, the statute directs that this be done. Plaintiff urges that this failure to file report is evidence that the board acted arbitrarily and unwarrantably. It appears from the evidence, however, that the board was unacquainted with this provision of the law, and that this had never been done in that county before. While this might not excuse its failure to comply, it does not to our minds indicate any arbitrary action. This particular provision is apparently for the benefit of unsuccessful applicants. We do not think this would invalidate the appointment. The report must necessarily be made after the appointment has been made by the board, and it was so understood by the plaintiff. The most that plaintiff claims in argument is that it indicates prejudice or arbitrary action. Under the circumstances and the evidence we do not think that it does.

This is an action under Code section 1162 and not under the provisions of section 1162-g1. While the district court, or this court, might not agree with the decision of the board, yet the appointment was within its discretion, within the terms prescribed by statute; and the court, on the showing made, cannot set aside the decision of the board and substitute its own judgment. We think the evidence shows that an investigation was made, and that there is no clear showing of abuse of discretion. It necessarily follows that the action of the board must be sustained and the holding of the district court reversed.— Reversed.

HAMILTON, RICHARDS, SAGER, and BLISS, JJ., concur.

OLIVER, C. J., and STIGER and MITCHELL, JJ., dissent.

MILLER, J., takes no part.