EARL L. DURST, Appellant, v. THE BOARD OF DIRECTORS OF THE GAZA CONSOLIDATED SCHOOL et al., Appellees.

No. 45006.

MAY 14, 1940.

464

McCulla & McCulla, for appellant.

T. E. Diamond and E. A. Jinkinson, for appellees.

RICHARDS, J.—On July 1, 1938, defendant Board of Directors hired one Frank Dau as janitor of the Gaza Consolidated School for the period of one year from and after that date at a salary for the year of $735. Several persons had made written applications for the position, each specifying the compensation for which he would serve if hired. Two applicants, one of them being Dau, had offered to accept $735 for the year's work. Plaintiff also filed an application for the position, stating: "I will put my bid in as the same as I have been getting $70 during school month and $50 during school month." He testified there was an error in that the $50 was intended to be for summer months. Out of the appointment of Dau has arisen the instant case. The occasion for a dispute seems to have lain in the fact that plaintiff was an honorably discharged soldier and had been occupying the position of janitor of this school before and up to July 1, 1938. On September 2, 1938, plaintiff brought this action of mandamus to obtain an order commanding defendant Board to continue plaintiff in employment as janitor, and commanding the Board to pay him $70 per month for 9 months and $50 per month for 3 months of each year (aggregating $780 per year) "as long as Plaintiff occupies the position of janitor of the Gaza Consolidated School". Plaintiff also prayed judgment for pay at the same rate beginning July 1, 1938. The trial court found that the merits and equities were with defendant Board and entered decree against plaintiff accordingly, from which he has appealed.

Plaintiff predicates his cause of action on chapter 60, Code

1935, known as the Soldiers Preference Law. Therein are found provisions that in every public department and upon all public works in the state, and of the counties, cities, towns, and school boards thereof, honorably discharged soldiers of certain wars shall, except in the position of school teachers, be entitled to preference in appointment, employment, and promotion over other applicants of no greater qualifications.

We come to the particular portion of chapter 60 on which plaintiff relies. It is section 1163, Code 1935, which reads:

"1163. Removal—certiorari to review. No person holding a public position by appointment or employment, and belonging to any of the classes of persons to whom a preference is herein granted, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, and with the right of such employee or appointee to a review by a writ of certiorari."

In applying this section to the facts that were in the case of Statter v. Herring, 217 Iowa 410, 251 N. W. 715, we held that the appointing of an honorably discharged soldier for an indefinite period to a public service of permanent character must be treated as creating a continuous employment, and it was further held that in such case removal from such employment is to be made in the manner provided in section 1163. On the other hand, under differing facts shown in Sorenson v. Andrews, 221 Iowa 44, 264 N. W. 562, we held that the Soldiers Preference Law does not impinge upon the power of boards of supervisors to appoint janitors for courthouses for periods having definite termination, and held further that, at the end of such definite period, the appointee having served his term of employment, is without right to continuance in employment by invoking the provisions of section 1163.

██ ██ In the instant case plaintiff takes the position that, because the Board did not follow the procedure prescribed in section 1163, he has not been removed from the position of

janitor he was holding up to July 1, 1938. We turn to the propositions and reasons offered by plaintiff in argument, in support of his position.

One proposition rests upon the right answer to a question of fact. That is, plaintiff says the evidence shows that he had been appointed as janitor for an indefinite period, and that therefore he is entitled to stand on the holding in the Statter case. The trial court held otherwise, and made a finding of fact that the employment of plaintiff by defendant Board prior to July 1, 1938, had been for definite yearly periods and had not been indefinite in character. It appears to us the evidence fully sustained the finding. The following proceedings were had by defendant Board as shown by the records kept by the Board and introduced in evidence. On November 29, 1930, plaintiff was hired "at $75.00 per month to finish the school year as Janitor." On April 7, 1931, he was hired "as Janitor for the year 1931-32 at $725.00 for the year and Janitor is to give needed care to grounds and buildings during summer vacation—Said $725.00 to be apportioned for the nine months school year." On June 9, 1932, at a special Board meeting, "it was decided to offer Earl Durst a contract at $55.00 per school month with $25.00 extra pay for taking care of the school and grounds during the summer vacation and also $25.00 extra for taking care of the school building during vacations which may happen during the school year. Mr. Durst was called in and signified his intentions to sign such a contract." On August 7, 1933, plaintiff was employed "for the school year of 1933-34 at a salary of $55.00 per month with $25.00 extra for cleaning the school building before school starts this fall" and with another $25 extra for caring for the building during any and all vacations "during the coming year starting with August 8, 1933 and ending August 8, 1934." On August 15, 1933, there was a motion to change the janitor's contract to read that his term of employment be from August 8, 1933, to the end of the 9 months of school which was to begin on September 4, 1933.

On July 27, 1934, plaintiff was hired as janitor for a term of 10 months beginning August 13, 1934, at $55 per month with a $5 per month raise after the first 2 months "if his work is satisfactory to the Board." On June 7, 1935, there was a motion to offer plaintiff a contract as janitor for the following year beginning June 10, 1935, at $40 per month "until school starts in the fall of 1935" and at $60 per month during school months and at $40 per month from the ending of school to June 10, 1936.

On April 14, 1936, there was a motion to hire plaintiff as janitor for one year beginning July 1, 1936, and ending July 1, 1937, at a salary of $780 payable as follows: $50 on August 1st and September 1st, $70 on the first of each of the next 9 months, and then $50 on "the first of July 1937 completing the contract." On June 7, 1937, there was a motion to hire plaintiff as janitor "for the year beginning July 1st, 1937 and ending July 1st, 1938 at the same salary he received for the year just completed."

Each of these yearly proceedings of the Board invited the formation of a contract by an acceptance amounting, in effect, to a promise by plaintiff to perform what the Board proposed. Daeges v. Beh, 207 Iowa 1063, 224 N. W. 80. And each year there was such an acceptance on part of plaintiff evidenced by a performance of his part, including the year that began on July 1, 1937. But as to the year last mentioned plaintiff would differentiate. He says that he did not know that the Board proceedings of June 7, 1937, offered him employment for one year. The proceedings were accessible to plaintiff, were public records, and plaintiff was bound to know that only by proceedings of that nature could defendant contract with him. In view of inferences from portions of plaintiff's testimony, the circumstances shown, and the practices the parties had for years been adopting and the testimony of other witnesses, we are persuaded that plaintiff as a witness was in error in respect to a lack of knowledge that on June 7, 1937, his employment, as fixed by the board, was

for one year. In any event, there being no issue involving misrepresentation, mutual mistake, or ambiguity in the Board's proceedings, it was what was done by plaintiff that manifested whether he accepted the offer. What he did was what completed a contract, that was binding on defendant Board, and likewise bound plaintiff. His secret intentions or motives or mental state were immaterial. Zimmerman v. Brannon, 103 Iowa 144, 72 N. W. 439. In section 70, of the Restatement of the Law of Contracts is this statement:

"§70. Effect of Making or Accepting a Written Offer.

"One who makes a written offer which is accepted, or who manifests acceptance of the terms of a writing which he should reasonably understand to be an offer or proposed contract, is bound by the contract, though ignorant of the terms of the writing or of its proper interpretation."

In many of our cases that are so familiar they need not be cited, one of the parties had signed a contract while in mental ignorance of its provisions. Our holdings have been that such act created a contract, inescapable where by exercise of reasonable diligence the party could have known what he was agreeing upon. It would appear that these cases are in accord with the quotation, the principal difference being in the thing that was done that manifested acceptance of the other party's proposition. The trial court rightly held on this fact question that there was not an indefinite tenure of the position of plaintiff at any time that would render the holding in the Statter case applicable. On the contrary the instant case is ruled by the Sorenson case.

Plaintiff also attacks the soundness of the holding in the Sorenson case, quoting at length from Thurber v. Duckworth, 165 Iowa 685, 147 N. W. 158. What is cited emphasizes the powers of the state in the selection of its servants and in prescribing what terms and conditions shall attach to the appointment. Such powers were not questioned in the Sorenson case. What plaintiff fails to recognize is that when a court

is confronted by two enactments, in each of which the legislature has spoken relative to the subject matter of a controversy, the duty becomes the court's to accord to each enactment so far as possible, that which the legislature intended. It was this cardinal rule of construction that necessitated the results reached in the Sorenson case.

In plaintiff's petition was no complaint with respect to the investigation made by the Board before making the appointment on July 1, 1938, and the conclusions the Board reached, to the effect that plaintiff had proved incompetent and was an unsatisfactory person to perform the duties of the janitor of this consolidated school. If that issue were before us, the record is such that the Board's conclusions could not be disturbed. McLaughlin v. Board of Supervisors, 227 Iowa 267, 288 N. W. 74. The only issues involving the writ prayed were those that have been discussed. In this court plaintiff criticizes the failure of the Board to make of record the conclusions from the investigation until November 28, 1938. But it is shown the Board did not earlier know of their duty in that respect, and under the limited issues and theory found in the petition there could have been no prejudice. We find no error in the trial court's decision that on July 1, 1938, the plaintiff had served his term of employment, and was without right to a continuance of the employment on the theory that there had been no termination effected by procedure in conformity with section 1163. The judgment and decree of the district court is affirmed.—Affirmed.

MILLER, STIGER, HALE, BLISS, and SAGER, JJ., concur.